NATIONWIDE BUILDING MAINTE-
NANCE, INC., Appellant,

v.

Arthur SAMPSON, Administrator, U. S.
General Services Administration, et al.

No. 76–1453.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 12, 1976.

Decided April 18, 1977.

Eloise E. Davies, Atty., Dept. of Justice, Washington, D. C., with whom Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on the brief for appellees.

Before BAZELON, Chief Judge, and TAMM and ROBB, Circuit Judges.

Opinion for the Court filed by TAMM, Circuit Judge.

TAMM, Circuit Judge:

Nationwide Building Maintenance, Inc. appeals from the summary judgment of the United States District Court for the District of Columbia which denied its request for an award of attorney fees and litigation costs [1] under section 552(a)(4)(E) of the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(4)(E) (Supp. V 1975). The district court's judgment rests on its conclusion that Nationwide had not "substantially prevailed" within the meaning of section 552(a)(4)(E) because the government abandoned its exemption claims and disclosed the requested information before the court made any finding that it had been wrongfully withheld. We disagree with the district court's ruling on this question of law and hold that Nationwide was eligible for an attorney fees award.

Section 552(a)(4)(E) does not provide, however, for an automatic award of attorney fees to every successful FOIA plaintiff. It contemplates a reasoned exercise of the courts' discretion taking into account all relevant factors. With respect to Nationwide's petition for attorney fees we think that particular consideration should have been given to the reasonableness of the government's exemption claims, the potential commercial benefit to Nationwide from disclosure of the information it sought and any general public benefit resulting from disclosure of the documents actually obtained. The single most important element un-

John B. Tieder Jr., Washington, D. C., with whom William W. Thompson Jr., Washington, D. C., was on the brief for appellant.

---

1. The district court's judgment also denied Nationwide's request for a written finding under section 552(a)(4)(F), "that the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding. . . ." 5 U.S.C. § 552(a)(4)(F) (Supp. V 1975). Nationwide has decided not to pursue this issue on appeal, however. Brief for Appellant at 7 n.*.

der section 552(a)(4)(E), however, is the courts' discretion, and we think that that discretion is more properly exercised by the trial court which has had a continuing relationship with the parties throughout the suit. We therefore remand this case to the district court for a decision whether Nationwide, as a party who has substantially prevailed, should be awarded attorney fees and litigation costs under section 552(a)(4)(E).

## I. BACKGROUND

On June 12, 1975, Nationwide filed a bid protest[2] with the General Accounting Office protesting the General Services Administration's (GSA) award of a janitorial services contract for an Internal Revenue Service Center in Philadelphia, Pennsylvania, to Ensec Service Corp.[3] Nationwide requested that "the award to Ensec be cancelled and the GSA be directed to award the contract to Nationwide." J.A. at 25. On July 18, 1975 Nationwide asked GSA to provide copies of certain documents relating to this contract award.[4] Ten days later GSA received a second FOIA request from Nationwide seeking documents relating to the cleaning services contract for the New Executive Office Building in Washington, D. C.[5] No bid protest had been filed with respect to that contract at the time of the request for documents. Just over two weeks later, however, Nationwide did file a protest with the General Accounting Office urging that the New Executive Office Building contract should have been awarded through small business restricted advertising. J.A. at 26–31.

In separate letters—the first sent nearly three weeks after Nationwide's request, the second only two—GSA advised Nationwide that no decision had been made on its requests. GSA had yet to reach a decision as of September 17, 1975, and Nationwide filed suit in the Unites States District Court for the District of Columbia[6] alleging as part

**2.** *See generally* 4 C.F.R. § 20 (1976) (procedures for protesting award of contract by federal agency).

**3.** The service contract for the building had been held previously by Nationwide. Brief for Appellant at 3.

**4.** Nationwide sought:
1. Copies of the proposals submitted by Surf Cleaners, Inc. and Ensec Service Corporation;
2. All documents pertaining to "best and final offers" in response to the bid proposal;
3. All documents pertaining to negotiations with each offeror under the bid proposal;
4. All documents pertaining to the selection and subsequent rejection of a proposal by Surf Cleaners, Inc.;
5. All documents evaluating, summarizing or discussing offers received under the bid proposal;
6. All documents pertaining to the decision to award the contract to Ensec;
7. All documents pertaining to the decision to reject Nationwide's offer;
8. All documents which justify the award to Ensec although it offered a higher price than Nationwide;
9. All documents summarizing Nationwide's performance of its contract for cleaning services at the IRS Service Center;
10. The Ensec Service Corporation's offer submitted in response to a proposed contract for the Department of Interior Building, Washington, D.C.;
11. All documents evaluating, summarizing or discussing all offers received with respect to the above contract;
12. All documents pertaining to the award of the above contract to Ensec Service Corporation;
13. All documents pertaining to the decision to reject Nationwide's offer under the above contract proposal.
Brief for Appellees at 3–4.

**5.** Nationwide's second request covered:
1. All documents relating to the decision to obtain the services through negotiated rather than advertised procurement;
2. All documents justifying negotiated rather than advertised procurement of these services;
3. All documents which relate to the procurement of janitorial services through negotiated rather than advertised procurement.
*Id.* at 4.

**6.** Section 552(a)(6) of the FOIA provides that an agency shall notify a party seeking information of its decision whether to comply or not within ten working days of receipt of a request. 5 U.S.C. § 552(a)(6)(A)(i) (Supp. V 1975). In certain statutorily defined circumstances this time limit may be extended up to ten more days, but the agency must give written notice of such an extension along with the reasons therefor. 5 U.S.C. § 552(a)(6)(B) (Supp. V 1975). Even if one could construe GSA's initial letters as adequate notices of extensions, the maximum possible time period of twenty work-

of its complaint that it needed the requested documents in order to substantiate its arguments in the bid protests before the General Accounting Office. One month later, and one day after Nationwide made its motion for a preliminary injunction, the GSA notified Nationwide that as of that date it had decided that the documents relating to the New Executive Office Building contract would be disclosed but that those relating to the Internal Revenue Service Center fell within specific exemptions of the FOIA and would not be disclosed.[7] Nationwide was also informed that this decision was being processed through GSA's internal appeal procedure.[8]

With the approval of the court, the parties agreed to file "dispositive motions" by late December 1975 in lieu of proceedings on Nationwide's motion for a preliminary injunction. Before any such motions were filed, GSA revised its opinion on disclosure of the Internal Revenue Service Center documents. It granted complete disclosure of one set of documents [9] and limited disclosure of three other documents.[10] GSA con-

tinued to refuse to disclose ten sets of documents, however, relying on exemptions four and five of the FOIA.[11] On five subsequent occasions, from late November to the middle of December, GSA made further disclosures explaining that, although some of the information provided was exempt, it nevertheless would be furnished unless it was also prejudicial to the government or the firm which had submitted it. *See* J.A. at 79–87.

Finally on December 19, 1975 the parties stipulated that GSA had provided all the information necessary for a complete response to Nationwide's request, J.A. at 52, and the government moved for dismissal or summary judgment on grounds of mootness. In its cross-motion for summary judgment Nationwide conceded that an injunction was now unnecessary but urged the court to award attorney fees under section 552(a)(4)(E). The district court entered summary judgment for the government and denied Nationwide's claim for attorney fees reasoning that Nationwide had not "substantially prevailed." J.A. at

---

ing days had run on each of Nationwide's requests before it filed suit. If an agency fails to comply with the time limits of the Act, the party seeking disclosure is "deemed to have exhausted his administrative remedies." 5 U.S.C. § 552(a)(6)(C) (Supp. V 1975).

7. GSA claimed that the contract proposals of Surf Cleaners, Inc. and Ensec Service Corp. were exempt from disclosure under section 552(b)(4) which exempts "commercial or financial information obtained from a person and privileged or confidential" 5 U.S.C. § 552(b)(4) (1970). According to GSA both Surf Cleaners and Ensec had requested that these proposals, which contained detailed operational plans, cost allocations, descriptions of internal corporate structure .and other proprietary financial information, not be released because disclosure would cause substantial harm to their competitive position in the future. *See generally National Park and Conservation Ass'n v. Kleppe,* 178 U.S.App.D.C. 376, 380–87, 547 F.2d 673, 677–84 (1976) (affirming in part district court finding that disclosure of certain financial information would cause substantial competitive harm).

· With respect to the other documents not disclosed, GSA claimed exemption as "intra-agency memoranda" under section 552(b)(5) of the Act and section 105–60.502(e) of title 41 of the

*Code of Federal Regulations* which merely restates the language of the statute.

8. *See generally* 41 C.F.R. § 105–60.404 (1976) (FOIA appeal process within GSA).

9. All documents relating to Nationwide's performance under its past contract for cleaning services at the IRS Center were disclosed.

10. The contract proposals of Surf Cleaners, Inc. and Ensec Service Corp., and the contract offer made by Ensec were disclosed after deletion of cost, pricing, personnel and organizational data constituting trade secrets or financial information which GSA concluded would harm the competitive positions of Surf and Ensec or would hamper the ability of GSA to operate a competitive contracting program. The agency relied on exemption four as authority to withhold that information.

11. For a list of the types of documents withheld see items 2 through 8 and 11 through 13 in note 4 *supra.* GSA told Nationwide that these documents reflected the deliberative process within the agency in evaluating contract proposals and were therefore exempt from disclosure as intra-agency memoranda under 552(b)(5). In addition, the agency claimed that they contained information from Surf Cleaners and Ensec which was exempt under 552(b)(4).

154–55. Nationwide now seeks review of that denial.

## II. COURT ORDER COMPELLING DISCLOSURE NOT A PREREQUISITE FOR AWARD OF ATTORNEY FEES

■ The government argues that Nationwide is not eligible for an attorney fees award under section 552(a)(4)(E) in the absence of a court order holding that GSA had wrongfully withheld the requested documents. It relies primarily on cases construing analogous attorney fees provisions in the civil rights laws,[12] the Social Security Act,[13] and the courts' interpretation of "prevailing party" for purposes of awarding costs under Rule 54(d) of the *Federal Rules of Civil Procedure.*[14] The only direct authority cited as support for its position is a district court decision denying attorney fees to a FOIA plaintiff that had received its requested information shortly after filing suit. *Vermont Low Income Advocacy Council v. Dunlop,* 71 F.R.D. 343 (D.Vt.), *aff'd sub nom., Vermont Low Income Advocacy Council v. Usery,* 546 F.2d 509 (2d Cir. 1976).

Although the Second Circuit did affirm the denial of attorney fees in *Vermont Low Income Advocacy Council* under the circumstances of that case,[15] it expressly repudiated the district court's conclusion that an order directing production is a necessary condition for an award of attorney fees under the FOIA. *Vermont Low Income Advocacy Council v. Usery,* 546 F.2d at 510, 513 (2d Cir. 1976). We agree with the Second Circuit and adopt its conclusion that a court judgment is not a prerequisite for

12. *Northcross v. Board of Educ.,* 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973) (§ 718 of Emergency School Aid Act of 1972); *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (§ 204(b) of Civil Rights Act of 1964); *Grubbs v. Butz,* 179 U.S.App.D.C. 18, 548 F.2d 973 (1976) (§ 706(k) of Civil Rights Act of 1964); *Williams v. General Foods Corp.,* 492 F.2d 399 (7th Cir. 1974) (same); *Mello v. Secretary of the Department of Health Education and Welfare,* 8 Empl.Prac. Dec. 5657 (D.D.C.1974) (same).

13. *Whitehead v. Richardson,* 446 F.2d 126 (6th Cir. 1971).

14. *Larkin v. McCann,* 368 F.Supp. 1352, 1354 (E.D.Wis.1974); *see* 10 C. Wright & A. Miller, Federal Practice and Procedure §§ 2667–2668 (1973).

15. On August 28, 1975, the Vermont Low Income Advocacy Council (VLIAC) requested the Boston office of the United States Department of Labor to disclose all information relating to the efforts of Vermont apple growers to recruit domestic labor to pick the 1975 harvest. The Boston office denied VLIAC's request by letter of September 8 and eight days later VLIAC appealed to the Solicitor of Labor in Washington. On October 2, the Solicitor wrote to VLIAC noting the necessity to obtain the records from the regional office before acting on its appeal and promised to advise VLIAC of his decision by October 22. The Solicitor requested the documents on October 3 and although something was immediately forwarded it was lost in transit.

As of October 30 VLIAC had not heard from the Solicitor and wrote a letter stating that it intended to file suit unless the requested information was received by November 5. That letter was not received in the Solicitor's office until November 5. Immediately a telegram was dispatched to VLIAC explaining the problems in receiving the documents from the regional office and requesting VLIAC to supply its telephone number so that the Department could contact it to discuss the matter. VLIAC did not respond to the telegram. Instead it filed this suit on November 12.

A second attempt in early November to have the documents delivered to Washington failed, but on the third try the correct records were finally received on December 11. The next day an informal decision was made to grant VLIAC's appeal with minor deletions to protect personal privacy and the documents were received by VLIAC on December 30. *See* 546 F.2d at 510–11.

Under these facts the Second Circuit found "no reason for rewarding VLIAC with moneys from the public treasury," *id.* at 514, because it could not show that its suit could have been reasonably regarded as necessary and that it had a substantial causative effect on delivery of the information. *Id.* at 513. The court noted that VLIAC was not under any time constraints which prevented it from contacting the Solicitor's Office to talk over the matter. *Id.* at 513–14. Moreover, VLIAC had conceded that if it had known all the facts concerning the Department's difficulty in obtaining the records for review and the efforts made to overcome them, which the court concluded it would have discovered if it had responded to the Solicitor's request for a discussion of the matter, it would not have gone to court at all. *Id.* at 514 n.5.

an attorney fees award under section 552(a)(4)(E). *See Cuneo v. Rumsfeld*, 180 U.S.App.D.C. ——, at —— – ——, 553 F.2d 1360 at 1364–1365 (1977).

It has long been the rule in American courts that attorney fees should not generally be awarded in the absence of explicit statutory authorizations.[16] In the early 1970's a broad exception to this rule began to evolve in the lower federal courts for litigants who advanced an important public interest.[17] This liberalization was short-lived, however, for the Supreme Court soon reaffirmed the strict application of the "American Rule" in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).[18] For our purposes, the most significant aspect of *Alyeska* is the Court's statement that its holding was based not on any evaluation of the merits of the rule barring attorney fees, 421 U.S. at 270, 95 S.Ct. 1612, but only on its conclusion that a rule so deeply rooted in court practice and congressional policy should not be departed from by courts, acting on their own, without legislative guidance. *Id.* at 271, 95 S.Ct. 1612. *Alyeska* thus does not condemn the awarding of attorney fees to successful litigants *per se*; it only admonishes the courts not to take the initiative in fashioning "drastic new rules" with respect to "a policy matter that Congress has reserved for itself." *Id.* at 269, 95 S.Ct. at 1627.

In the 1974 amendments to the FOIA, Congress explicitly authorized the courts to award attorney fees to complainants who have "substantially prevailed."[19] If, as *Alyeska* cautions, Congress is the master of this policy area, our construction of "substantially prevailed" should rely on the particular legislative intent behind section 552(a)(4)(E) rather than on any "common law" meaning of that phrase derived from court interpretations of similar language in other statutory contexts. The "unusually complete" legislative history of section 552(a)(4)(E) is extensively discussed in *Vermont Low Income Advocacy Council, supra,* 546 F.2d at 512–13, and clearly indicates that Congress did not intend to require a court judgment as a prerequisite for an award of attorney fees under section 552(a)(4)(E). *Id.* at 512–13; *see* H.R.Rep. No.93–1380, 93d Cong., 2d Sess. 9–10 (1974) (conference report); S.Rep.No.93–854, 93d Cong., 2d Sess. 17–20 (1974); H.R.Rep.No. 93–876, 93d Cong., 2d Sess. 6–7, U.S.Code Cong. & Admin.News p. 6267 (1974).

Except for the court in *Vermont Low Income Advisory Council v. Dunlop, supra,* the district courts which have addressed this issue have also concluded that a FOIA plaintiff is not absolutely barred from an award of attorney fees because the government acts to moot his claim before judg-

---

**16.** *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247–57, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). There are narrow exceptions to this rule, however, under which courts may award attorney fees in particular situations unless explicitly forbidden by Congress. *See, e. g., Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970) (common fund recovered for benefit of others as well as plaintiff); *Vaughn v. Atkinson*, 369 U.S. 527, 530–31, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962) (bad faith); *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 426–27, 43 S.Ct. 458, 67 L.Ed. 719 (1923) (willful disobedience of court order); *see Alyeska, supra,* 421 U.S. at 257–59, 95 S.Ct. 1612; *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967).

**17.** *See, e. g., Hoitt v. Vitek*, 495 F.2d 219 (1st Cir. 1974); *Cornist v. School Bd.*, 495 F.2d 189 (5th Cir. 1974); *Morales v. Haines*, 486 F.2d 880 (7th Cir. 1973). *But see Bradley v. School Bd.*, 472 F.2d 318, 327–31 (4 Cir. 1972), *vacated on other grounds*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); *cf. Bridgeport Guardians, Inc. v. Members of Bridgeport Civil Service Comm'n*, 497 F.2d 1113 (2d Cir. 1974), *cert. denied*, 421 U.S. 991, 95 S.Ct. 1997, 44 L.Ed.2d 481 (1975) (no abuse of discretion in denial of attorney fees to successful § 1983 plaintiffs).

**18.** The Supreme Court reversed a holding of this court that although the Wilderness Society did not fall within any of the well established narrow exceptions to the general rule it nonetheless was entitled to attorney fees as a "private attorney general" who had vindicated important statutory rights of all citizens and ensured proper government. 421 U.S. at 245, 269–71, 95 S.Ct. 1612.

**19.** 1974 Amendments to the Freedom of Information Act, Pub.L.No.93–502, 88 Stat. 1561 (1974).

ment is entered in his suit. *See, e. g., Pope v. United States,* 424 F.Supp. 962 (S.D.Tex. 1977); *American Federation of Government Employees v. Rosen,* 418 F.Supp. 205, 208–09 (N.D.Ill.1976); *Goldstein v. Levi,* 415 F.Supp. 303, 304–05 (D.D.C.1976); *Kaye v. Burns,* 411 F.Supp. 897, 902 (S.D.N.Y.1976); *Communist Party of the United States v. Department of Justice,* No. 75–1770 (D.D.C. 1975) (unpublished opinion), *appeal pending,* No. 76–1746 (D.C.Cir.); *Consumers Union of United States v. Board of Governors of the Federal Reserve System,* 410 F.Supp. 63, 64 (D.D.C.1975).

If the government could avoid liability for fees merely be conceding the cases before final judgment, the impact of the fee provision would be greatly reduced. The government would remain free to assert boilerplate defenses, and private parties who served the public interest by enforcing the Act's mandates would be deprived of compensation for the undertaking. Thus, a general bar to awards of fees in cases resolved before final judgment cannot be accepted by the court. *Communist Party, supra.*

■ We hold that it was error for the district court in this case to conclude that Nationwide was not eligible for an award of attorney fees simply because it did not win a court order compelling disclosure. Of course, Nationwide's eligibility for an award of attorney fees does not mean that it is necessarily entitled to such an award.

Congress clearly intended to grant the courts broad discretion in deciding whether attorney fees should be awarded on the particular facts of each case.

## III. SCOPE OF COURTS' DISCRETION UNDER ATTORNEY FEES PROVISION OF FOIA

Section 552(a)(4)(E), like the other provisions added to the FOIA by the 1974 amendments,[20] grew out of a general dissatisfaction with the administrative response to the policy of open government embodied in the Act.[21] Extensive oversight hearings held in 1971 and 1972 brought to light substantial "foot-dragging" on the part of administrative officials who invoked every conceivable delaying technique and forced citizens requesting information under the FOIA to resort to expensive litigation for vindication of their statutory rights.[22] Several witnesses suggested either financial penalties for inordinate delay in responding to a FOIA request or the award of attorney fees to successful FOIA plaintiffs.[23] The House Committee on Government Operations subsequently recommended that strict deadlines be set for administrative response to FOIA requests and that attorney fees be awarded where a court found that information had been wrongfully withheld.[24]

Several bills were introduced in the 93d Congress embodying the Committee's recommendations.[25] Hearings were held,[26] and

---

**20.** *Id.*

**21.** *See* Subcommittee on Government Information and Individual Rights of House Comm. on Government Operations & Subcomm. on Administrative Practice and Procedure of the Senate Comm. on the Judiciary, 94th Cong., 1st Sess., Freedom of Information Act and Amendments of 1974, Source Book: Legislative History, Texts, and other Documents 8–42 (1975) (Joint Committee Print) [hereinafter referred to as Joint Committee Print]; *Hearings on Executive Privilege, Secrecy in Government and Freedom of Information Before the Subcomm. on Intergovernmental Relations of the Senate Comm. on Government Operations and the Subcomm. on Separation of Powers and Subcomm. on Administrative Practice and Procedure of the Senate Comm. on the Judiciary,* 93d Cong., 1st Sess. Vol. III at 477–98 (1973) [hereinafter referred to as *1973 Senate Hearings*].

*See also* Katz, *The Games Bureaucrats Play: Hide and Seek under the Freedom of Information Act,* 48 Texas L.Rev. 1261 (1970); Nader, *Freedom from Information: The Act and the Agencies,* 5 Harv.Civ.R.—Civ.Lib.L.Rev. 1 (1970).

**22.** *See* H.R.Rep.No.92–1419, 92 Cong., 2d Sess. 20–42, 73–74 (1972).

**23.** *See id.* at 38–40.

**24.** *Id.* at 83.

**25.** *See* H.R. 4960, H.R. 5425, H.R. 12080, 93d Cong., 1st Sess. (1973).

**26.** *Hearings on H.R. 4960 and H.R. 5425 before Subcomm. on Foreign Operations and Government Information of the House Comm. on*

H.R. 12471 was passed as the final House version on March 14, 1974.[27] With respect to attorney fees, that bill provided:

The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the United States or an officer or agency thereof, as litigant, has not prevailed.[28]

In the Senate a companion bill of the original House bill, S. 1142, was considered during joint hearings on government information policy conducted by three subcommittees.[29] Three months later in October, 1973 Senator Kennedy introduced S. 2543 which differed from both S. 1142 and the House bill. S. 2543 was reported without hearings,[30] debated, and amended on the floor.[31] Its provisions, as amended, were substituted for the language of H.R. 12471, whereupon that bill was passed by the Senate on May 30, 1974.[32] The Senate version of the attorney fees provision of H.R. 12471 read:

The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed. In exercising its discretion under this paragraph, the court shall consider the benefit to the public, if any, deriving from the case, the commercial benefit to the complainant and the nature of his interest in the records sought, and whether the Government's withholding of the records sought had a reasonable basis in law.[33]

This and other differences between the House and Senate versions of the bill were submitted to a Conference Committee which adopted the first sentence of the Senate attorney fees provision but dropped

its specific listing of the factors to be considered by the courts in exercising their discretion. The Conference Report makes it clear, however, that this deletion was made to avoid limiting the court to these four factors and was not intended to make the award of attorney fees automatic or to preclude the courts from considering those factors. H.R.Rep.No.93–1380, *supra* at 10; *see* Joint Committee Print at 118 (unofficial staff notes of Conference Committee meetings).

■ Our examination of this legislative history persuades us that section 552(a)(4)(E) was not enacted to provide a reward for any litigant who successfully forces the government to disclose information it wished to withhold. It had a more limited purpose—to remove the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation.

■ The Senate Judiciary Committee Report on S. 2543, containing the most extensive congressional discussion of this issue, clearly indicates that the attorney fees provision was adopted to ensure that judicial review of exemption claims would be available practicably as well as legally. The Report states that "[t]oo often the barriers presented by court costs and attorneys' fees are insumountable [sic] for the average person requesting information, allowing the government to escape compliance with the law." S.Rep.No.93–854, *supra* at 17. Quoting from Senator Thurmond the Report emphasizes:

*Government Operations,* 93 Cong., 1st Sess. (1973).

**27.** 120 Cong.Rec. 6804–20 (1974).

**28.** Joint Committee Print at 147; *see* H.R.Rep. No.93–876 93d Cong., 2d Sess. 6–7 (1974).

**29.** 1973 *Senate Hearings* (FOIA issues were discussed on April 11, 12, May 9, June 7, 8, 11, 26).

**30.** *See* S.Rep.No.93–854, 93d Cong., 2d Sess. (1974).

**31.** 120 Cong.Rec. 17014–40, 17042–47 (1974).

**32.** *Id.* at 17045–47.

**33.** *Id.* at 17014; *see* H.R.Rep.No.93–1380, *supra* at 9–10.

We must insure that the average citizen can take advantage of the law to the same extent as the giant corporations with large legal staffs. Often the average citizen has foregone the legal remedies supplied by the Act because he has had neither the financial nor legal resources to pursue litigation when his Administrative remedies have been exhausted.

*Id.* at 18 *quoting from 1973 Senate Hearings,* Vol. I at 175. It also provided illustrations of how the four factors—public benefit, commercial benefit to the complainant, nature of the complainant's interest in the records sought and reasonableness of the government's asserted legal basis for withholding—should be applied in particular cases.

Under the first criterion a court would ordinarily award fees, for example, where a newsman was seeking information to be used in a publication or a public interest group was seeking information to further a project benefitting the general public, but it would not award fees if a business was using the FOIA to obtain data relating to a competitor or as a substitute for discovery in private litigation with the government.

Under the second criterion a court would usually allow recovery of fees where the complainant was indigent or a nonprofit public interest group versus

[sic] but would not if it was a large corporate interest (or a representative of such an interest). For the purposes of applying this criterion, news interests should not be considered commercial interests.

Under the third criterion a court would generally award fees if the complainant's interest in the information sought was scholarly or journalistic or public-interest oriented, but would not do so if his interest was of a frivolous or purely commercial nature.

Finally, under the fourth criterion a court would not award fees where the government's withholding had a colorable basis in law but would ordinarily award them if the withholding appeared to be merely to avoid embarrassment or to frustrate the requester.

*Id.* at 19.[34] Summing up the effect that consideration of these factors should have on the courts' discretion the Committee reported that

there will seldom be an award of attorneys' fees when the suit is to advance the private commercial interests of the complainant. In these cases there is usually no need to award attorneys' fees to insure that the action will be brought. The private self-interest motive of, and often pecuniary benefit to, the complainant will be sufficient to insure the vindication of the rights given in the FOIA. The court

---

**34.** The government has argued that unless we require a court finding of wrongful withholding for eligibility for an attorney fees award under section 552(a)(4)(E) we will encourage less disclosure and more litigation since an agency would be unwilling to settle a suit by disclosing information which while arguably exempt need not be withheld. Indeed, it claims that the delay of the GSA which gave rise to this litigation resulted from that agency's close scrutiny of the documents requested through its internal appeals procedure pursuant to a policy of releasing even lawfully exempt material for which there is no other vital interest requiring non-disclosure. Brief for Appellees at 35–36.

Surely this is an important consideration. The FOIA should not be construed so as to put the federal bureaucracy in a defensive or hostile position with respect to the Act's spirit of open government and liberal disclosure of information. *But cf. Charles River Park "A",*

*Inc. v. Department of Housing & Urban Dev.,* 171 U.S.App.D.C. 286, 519 F.2d 935 (1975) (decision of agency to disclose information within a FOIA exemption may be an abuse of discretion). Nevertheless, we believe that this is an issue which should be addressed to the courts' discretionary evaluation of the reasonableness of the government's resistance to a FOIA plaintiff's request, not a reason for requiring a judgment of wrongful withholding as a prerequisite for the exercise of that discretion. Certainly where the government can show that information disclosed after initial resistance was nonetheless exempt from the FOIA a plaintiff should not be awarded attorney fees under section 552(a)(4)(E). Indeed, if the government only establishes that it had a reasonable basis in law for resisting disclosure it may be proper to deny a FOIA plaintiff's motion for attorney fees unless other factors affirmatively justify such an award.

should not ordinarily award fees under this situation unless the government officials have been recalcitrant in their opposition to a valid claim or have been otherwise engaged in obdurate behavior.

*Id.*

The application of section 552(a)(4)(E) in the district courts has been consistent with this legislative history. In *Goldstein v. Levi, supra,* the court based its award of attorney fees on the plaintiff's status as a television producer who had sought information for use in a public television documentary and a book rather than for his personal commercial benefit. 415 F.Supp. at 305; *accord, Consumers Union of United States v. Board of Governors of the Federal Reserve System, supra.* The court distinguished two cases cited by the government in opposition to the award because "they involved FOIA requests which were personal or commercial and did not involve the public interest . . . ."[35] 415 F.Supp. at 304. In *Chamberlain v. Alexander,* 419 F.Supp. 235 (S.D.Ala.1976), a successful FOIA plaintiff was denied attorney fees because the Internal Revenue Service documents he had sought related solely to his personal and commercial interest, not any administrative policy of general public in-

terest, and because the government's resistance had a reasonable basis in law. Similarly in *Kaye v. Burns, supra,* the court denied a request for attorney fees because the government had a reasonable basis in law for resisting disclosure and there was "little doubt that this action was brought to further plaintiff's commercial interest. . . . [T]here has been little, if any, benefit to the public by virtue of plaintiff's action."[36] 411 F.Supp. at 904–05; *cf. Pope v. United States, supra* (plaintiff who sought government files relating to his tax litigation denied attorney fees because documents within exemption and his motives were personal and commercial).

■ Nationwide argues that the courts' discretion under 552(a)(4)(E) should be narrowly limited so that attorney fees could only be denied in exceptional circumstances. It reasons that the citation of the attorney fees provisions of Title II and Title VII of the Civil Rights Act of 1964[37] and cases applying those provisions[38] in the committee reports is clear evidence of a congressional intent to incorporate into 552(a)(4)(E) the same presumption in favor of awarding attorney fees which the courts have read into the civil rights provisions.[39]

---

**35.** The opinions in the two cases distinguished by the court, *Friedman v. Kelly,* No. 75–965 (D.Or. Apr. 4, 1976), and *Orange County Vegetable Improvement Cooperative Association v. Department of Agriculture,* No. 75–842 (D.D.C. Mar. 4, 1976), are not published, but the court summarized the relevant facts of each case in a footnote. 415 F.Supp. at 304 n.4. *Friedman* involved a plaintiff who sought her FBI file for personal interests and *Orange County* was a case promoted for the plaintiff's commercial interests rather than the public interest. *See id.*

**36.** The plaintiff in *Kaye* had requested records of the Federal Reserve Board relating to acquisitions and other activities of Equimark Corp. and a copy of a summary of a meeting between staff members of the Board of Governors and counsel for Equimark. His requests were honored with two exceptions. The Board refused to disclose a letter from an Assistant Secretary of the Board to Equimark claiming that it was exempt and stated that no summary had been made of the meeting referred to. Plaintiff thereupon filed suit and two months later the United States Attorney provided him a copy of

the letter previously withheld. Plaintiff apparently conceded that no summary of the meeting existed. *See* 411 F.Supp. at 898–901. In discussing plaintiff's motivation the court noted that he was involved in litigation against Equimark and that his FOIA request was doubtless related to discovery in that dispute. *Id.* at 905.

**37.** §§ 204(b), 706(k), 42 U.S.C. §§ 2000a–3(b), 2000e–5(k) (1970).

**38.** *E.g., Newman v. Piggie Park Enterprises, supra; Parham v. Southwestern Bell Tel. Co.,* 433 F.2d 421 (8th Cir. 1970); *see* note 12 *supra.*

**39.** In *Newman v. Piggie Park Enterprises, Inc., supra,* the Supreme Court reversed a court of appeals holding that attorney fees should only be awarded in a Title II suit where defenses were not advanced in good faith, but only for purposes of delay. 390 U.S. at 401, 88 S.Ct. 964. The Court stated that "one who succeeds in obtaining an injunction under that Title should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id.* at 402, 88 S.Ct. at 966.

714

The Supreme Court's decision to narrowly confine the courts' discretion to deny an award of attorney fees in Title II or Title VII suits was based on its conclusion that Congress intended private suits to be an important part of the Act's enforcement scheme and that that intent would be frustrated unless attorney fees were routinely awarded. *See Newman v. Piggie Park Enterprises*, 390 U.S. 400, 401–02, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). Inherent in the Court's conclusion is the assumption that the potential personal benefit resulting from a successful Title II or Title VII suit is an insufficient incentive to encourage private plaintiffs to bear the expense of litigation, notwithstanding the benefits which such suits produce for the public generally.

The FOIA relies on private suits for enforcement as well, but it is not as easily assumed that the benefits of disclosure for individual FOIA plaintiffs will almost always be insufficient to overcome the economic disincentives to seek judicial review. The large majority of FOIA suits may yield broad public benefits and relatively small personal private gain, but it is not far fetched to imagine FOIA requests motivated by the potential private economic gain which could result from disclosure. *See, e.g., Pope v. United States, supra; Chamberlain v. Alexander, supra; Kaye v. Burns, supra*. In addition, unlike the attorney fee provisions of Title II and Title VII, the legislative history of section 552(a)(4)(E) evinces a clear congressional intent to leave the courts' broad discretion when considering a request for attorney fees. *See* H.R. Rep.No.93–1380, *supra* at 10; notes 28–34, *supra,* and accompanying text. Under the teaching of *Alyeska* we should rely on that expressed legislative intent rather than a judicial rule developed under a different statutory provision.

To say that the decision whether Nationwide, or any successful FOIA plaintiff, should be awarded attorney fees is within the discretion of the courts is not to say that that discretion is unguided. Certainly the courts should consider the four factors discussed in the committee reports although they must be careful not to give any particular factor dispositive weight. Even when these factors were incorporated in the proposed statutory language, they were "intended to provide guidance and direction— not airtight standards . . .." S.Rep. No.93–854, *supra* at 19. Moreover, Congress's express intention in removing them from the statutory language was to avoid limiting the courts' consideration. Courts should not inadvertently frustrate that intent by failing to search out and consider other factors that may be relevant to whether attorney fees should be awarded to a successful FOIA plaintiff.

■ In *Vermont Low Income Advocacy Council, supra,* 546 F.2d at 513, the Second Circuit articulated two other factors to be considered: 1) whether the prosecution of the plaintiff's action could reasonably have been regarded as necessary and 2) whether his suit had a substantial causative effect on the delivery of the information. Applying those factors to the situation before it, the court denied attorney fees to a FOIA plaintiff who had chosen to "make a 'federal case' out of a matter that . . . had promise of amicable resolution," *id.* at 514, where the result "was not one whit different than if [plaintiff] had withheld legal action," and the record showed that the agency sincerely desired to disclose all that the FOIA required and more but was delayed because of excusable delay in its administrative appeal process.[40] *Id.* at 515. The court's opinion explicitly rejected the contention that the government's failure to act within the time limits imposed by section 552(a)(6)(A) of the FOIA[41] or to seek

**40.** *See* note 15 *supra.*

**41.** Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall—

(i) determine within ten days (excepting Saturdays, Sundays, and legal public holi-

days) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination; and

an extension of those time limits [42] precludes a court from rejecting a request for attorney fees on the grounds that the plaintiff could not have reasonably regarded court action as necessary. *Id.* at 514 n.6. Those time limits are intended to prevent the government from utilizing administrative delay to shield FOIA disputes from judicial review. They should not be read as a congressional imprimatur, conclusively establishing the necessity of court action when an agency does not comply—particularly where the administrative delay arises from an agency's attempt to comply fully with the spirit of the FOIA by supplying all requested information, whether exempt or not, unless there is a vital reason not to disclose it.

As a final and overriding guideline courts should always keep in mind the basic policy of the FOIA to encourage the maximum feasible public access to government information and the fundamental purpose of section 552(a)(4)(E) to facilitate citizen access to the courts to vindicate their statutory rights. Each of the particular factors we have discussed must be evaluated in light of these fundamental legislative policies. The touchstone of a court's discretionary decision under section 552(a)(4)(E) must be whether an award of attorney fees is necessary to implement the FOIA. A grudging application of this provision, which would dissuade those who have been denied information from invoking their right to judicial review, would be clearly contrary to congressional intent.

■ Nationwide's request for attorney fees requires a multifarious analysis of all the factors we have highlighted. On the one hand the government argues that Nationwide should not be awarded attorney fees because its sole interest in obtaining the requested information was to substantiate its bid protests, because the documents released were not of general public interest, and because the GSA had a reasonable basis in law for resisting disclosure. Brief for Appellees at 38–39 & n.26; *id.* at 47. On the other hand Nationwide contends that the actual impact of its bid protests was public and general because it corrected improprieties in GSA procurement procedures and because it did not result in any compensation or contract award for Nationwide. Brief for Appellant at 20 n.*; Reply Brief for Appellant at 24. Nationwide does not deny, however, that it remains a potential future contractor under those corrected procedures and that at the time of its FOIA request, before the bid protest had been

---

(ii) make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal. If on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination under paragraph (4) of this subsection.

5 U.S.C. § 552(a)(6)(A) (Supp. V 1975).

**42.** In unusual circumstances as specified in this subparagraph, the time limits prescribed in either clause (i) or clause (ii) of subparagraph (A) may be extended by written notice to the person making such request setting forth the reasons for such extension and the date on which a determination is expected to be dispatched. No such notice shall specify a date that would result in an extension for more than ten working days. As used in this subparagraph, "unusual circumstances" means, but only to the extent reasonably necessary to the proper processing of the particular request—

(i) the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request;

(ii) the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or

(iii) the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein.

5 U.S.C. § 522(a)(6)(B) (Supp. V 1975). Moreover, after a FOIA plaintiff has filed suit the court may grant the agency additional time to complete its review of the requested information if the government can show "exceptional circumstances" and "due diligence." 5 U.S.C. § 552(a)(6)(C) (Supp. V 1975); *see Open America v. Watergate Special Prosecution Force,* 178 U.S.App.D.C. 308, 547 F.2d 605 (1976); 11 Georgia L.Rev. 241 (1976).

decided, it had asked the GAO to order the GSA, as part of the relief in the bid protest decision, to award the Internal Revenue Service Center contract to Nationwide. Thus both commercial incentive and pecuniary benefit are factors to weigh in the balance along with consideration of any public service rendered as a private attorney general vindicating the policies of the FOIA.[43] This case also appears to raise the issues of the necessity for suit and its causative effect on the government's decision to disclose. Although not a clear cut case of unreasonable resort to litigation like *Vermont Low Income Advocacy Council, supra*, it is also not a case of absolute resistance to disclosure before the plaintiff sought judicial review, *e.g., Goldstein v. Levi, supra.*

Only the commercial motivation issue was raised before the district court and even that was not a basis for the court's decision to deny attorney fees to Nationwide. Therefore we think that although both sides in this litigation have urged us to decide the question of attorney fees ourselves, the more appropriate course is to remand for a decision by the district court in light of the relevant factors we have articulated in this opinion. We may well have the authority to make our own discretionary decision under section 552(a)(4)(E),[44] but in this area where, as we have emphasized, Congress has relied on the broad discretion of the courts, it is better to have that discretion exercised by the court which has been the most intimately associated with the case. A remand here does not necessarily require any further delay for additional proceedings. The district court is of course free to conduct what inquiry it deems necessary for a full exploration of the relevant factors.

Nationwide did "substantially prevail" in its FOIA action and was entitled to a discretionary decision by the court as to whether it deserved an attorney fees award under section 552(a)(4)(E). Since that discretion is best exercised by the court most closely associated with the case we do not ourselves decide that question but remand the case to the district court for a decision not inconsistent with this opinion.

*Reversed and remanded.*

---

**43.** Although *Alyeska* prevents the courts from awarding attorney fees under a private attorney general theory in the absence of statutory authorization, it has not vitiated the effect of that rationale under a legislative provision which clearly contemplates its application. *See Northcross v. Board of Educ.*, 412 U.S. 427, 428, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973) (§ 718 of Emergency School Aid Act of 1972 interpreted to ordinarily provide attorney fees as does § 204(b) of Civil Rights Act of 1964 since both contemplate enforcement by private attorneys general).

**44.** *See Vermont Low Income Advocacy Council v. Usery, supra; cf. Reed v. Arlington Hotel Co.*, 476 F.2d 721, 726 (8th Cir.), *cert. denied,* 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 103 (1973) (court of appeals reversed dismissal of plaintiffs' class action under Title VII of Civil Rights Act of 1964; found plaintiff entitled to attorney fees); *Malone v. North American Rockwell Corp.*, 457 F.2d 779, 881 (9th Cir. 1972) (court of appeals reversed district court holding of no jurisdiction; awarded attorney fees).