1 F.3d 1235
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Phyllis YOUNG, Plaintiff-Appellant,
v.
DIRECTOR, CENTRAL INTELLIGENCE AGENCY, Defendant-Appellee.
 No. 92-2561.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 8, 1993.
Decided: August 10, 1993.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CA-91-527-A)
 Thomas Kass Berger, Reston, Virginia, for Appellant.
 Margaret Ann Smith, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 Kenneth E. Melson, United States Attorney, Alexandria, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before NIEMEYER and HAMILTON, Circuit Judges, and GARBIS, United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Phyllis Young (Young), alleging she was forced to resign from the Central Intelligence Agency (CIA) because of her inquiries about alleged malfeasance by fellow employees, brought an action pursuant to the Freedom of Information Act, 5 U.S.C. Sec. 552 (FOIA), seeking various materials compiled by the CIA in the course of its investigation of her complaints and certain personnel documents concerning her own employment. The CIA voluntarily produced most of the documents requested by Young. The United States District Court for the Eastern District of Virginia granted the CIA's motion for summary judgment, and this court affirmed that decision on July 23, 1992. Young v. Central Intelligence Agency, 972 F.2d 536 (4th Cir. 1992). Young then filed a motion for attorney's fees which was denied by the district court on November 30, 1992. It is this decision that Young now appeals. Because the district court did not abuse its discretion in denying Young's request for attorney's fees, we affirm.
 
 
 2
 * The facts in the case underlying this appeal were reported in our previous decision and need not be detailed again. Young, 972 F.2d at 537-38. Briefly speaking, while Young was employed at the CIA, she noted what she believed to be overtime and leave abuse and financial malfeasance committed by her fellow employees. Young reported these suspicions to her superiors and the CIA Inspector General who conducted an investigation. Young alleged the CIA pressured her into resigning as a result of her whistle-blowing. In May 1989, Young requested the following information under the FOIA:
 
 
 3
 (1) Documents relating to an Inspector General investigation arising out of her complaint of overtime and leave abuse;
 
 
 4
 (2) Documents relating to an Inspector General investigation arising out of her complaint of financial malfeasance;
 
 
 5
 (3) A management memo requesting a fitness-for-duty examination for Young while she was employed by the CIA; and
 
 
 6
 (4) All of her CIA personnel documents which she had not already acknowledged seeing.
 
 
 7
 Following her resignation, Young continued to seek the requested documents. The CIA's initial response to the request was to release sixteen documents in full, seventy-five documents in part, and withhold forty-nine documents in full. Young administratively appealed to the CIA the denial of access to the documents. After waiting over a year for the agency to respond, she filed her complaint in the district court.
 
 
 8
 The district court ordered the CIA to prepare an index of the documents in question pursuant to Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974) (the Vaughn index). The CIA provided the Vaughn index together with declarations describing the documents withheld and the justifications for the withholdings. The CIA also released many of the documents it had previously withheld. After reviewing the newly released material, Young advised the court she was satisfied with the documents released and only twenty-one items remained in dispute. The district court found the declarations made pursuant to the Vaughn index met the required standards of clarity, specificity, and detail; and thus concluded the remaining documents were properly exempt from disclosure under the FOIA. Young appealed the district court's decision to this court and we affirmed, holding that the district court did not abuse its discretion in entering summary judgment.
 
 
 9
 Young then filed her motion for attorney's fees on September 28, 1992. On November 30, 1992, the district court denied Young's motion for attorney's fees finding Young was not entitled to an award of attorney's fees because she did not obtain the requested information in response to any court order and she had lost on the issues raised in her complaint. The district court also based its decision on the findings that: (1) the documents sought did not contain the type of information which would have public benefit/impact, (2) the CIA had a reasonable and legally sufficient basis for the withholdings, and (3) there was nothing in the record to indicate the release of the material reflected an attempt to thwart the policies of the FOIA.
 
 II
 
 10
 Under 5 U.S.C. Sec. 552a(4)(E) of the FOIA, a district court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred ... [if] the complainant has substantially prevailed." (emphasis added). Young has the burden of establishing she has met this "substantially prevailed" standard. Pyramid Lake Paiute Tribe v. U.S. Dept. of Justice, 750 F.2d 117, 119 (D.C. Cir. 1984). The determination of whether a plaintiff has substantially prevailed is largely a question of causation, that is, did the litigation cause the agency's surrender of that information. Cox v. Department of Justice, 601 F.2d 1, 6 (D.C. Cir. 1979). Causation may be established if "the action could reasonably be regarded as necessary to obtain the information ... and that a causal nexus exists between the action and the agency's surrender of that information."
 
 
 11
 Id.
 
 
 12
 Even if a plaintiff substantially prevails, however, a district court may nevertheless, in its discretion, deny the fees. The exercise of this discretion is appropriate if the award of attorney's fees "will [not] encourage fulfillment of the purposes of FOIA." Nix v. United States, 572 F.2d 998, 1007 (4th Cir. 1978) (holding that where suit is brought to benefit the plaintiff's own interests, as opposed to being for the public benefit, a district court could not be said to have abused its discretion in denying fees).
 
 
 13
 The legislative history of the Act and subsequent case law have identified four nonexclusive factors which courts may consider in exercising its discretion: (1) the public benefit derived from disclosure; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the information; and (4) whether the agency had a reasonable basis in law for refusing to release the information. See Nationwide Building v. Sampson, 559 F.2d 704, 712 (D.C. Cir. 1977) (cited with approval by this court in Nix, 572 F.2d at 1007). The use of these criteria was succinctly explained in the Senate Judiciary Report on the fee provision statute:
 
 
 14
 Under the first criterion a court would ordinarily award fees, for example, where a newsman was seeking information to be used in a publication or a public interest group was seeking information to further a project benefitting the general public, but it would not award fees if a business was using the FOIA to obtain data relating to a competitor or as a substitute for discovery in private litigation with the government.
 
 
 15
 Under the second criterion a court would usually allow recovery of fees where the complainant was indigent or a nonprofit public interest group versus (sic) but would not if it was a large corporate interest (or a representative of such an interest). For the purposes of applying this criterion, news interests should not be considered commercial interests.
 
 
 16
 Under the third criterion a court would generally award fees if the complainant's interest in the information sought was scholarly or journalistic or public-interest oriented, but would not do so if his interest was of a frivolous or purely commercial nature.
 
 
 17
 Finally, under the fourth criterion a court would not award fees where the government's withholding had a colorable basis in law but would ordinarily award them if the withholding appeared to be merely to avoid embarrassment or to frustrate the requester.
 
 
 18
 S.Rep. No. 93-854, 93d Cong., 2d Sess. (1974), quoted in Nationwide Bldg. Maintenance v. Sampson, 559 F.2d 704, 712 (D.C. Cir. 1977). The Committee summarized the import of these factors as follows:
 
 
 19
 There will seldom be an award of attorneys' fees when the suit is to advance the private commercial interests of the complainant. In these cases there is usually no need to award attorneys' fees to insure that the action will be brought. The private self-interest motive of, and often pecuniary benefit to, the complainant will be sufficient to insure the vindication of the rights given in the FOIA. The court should not ordinarily award fees under this situation unless the government officials have been recalcitrant in their opposition to a valid claim or have been otherwise engaged in obdurate behavior.
 
 
 20
 Id.
 
 
 21
 In this case, the district court apparently misconstrued the appropriate order of inquiry. The district court correctly stated that Young was not eligible to receive attorney's fees unless she substantially prevailed, but did not state whether Young had substantially prevailed. The district court instead based its decision on the discretionary factors. Because we conclude the district court did not abuse its discretion based on the four factors, we find it unnecessary to consider whether Young was a prevailing party.
 
 
 22
 The district court concluded the vast majority of the documents did not contain the type of information which would be of any public impact or benefit since they primarily regarded the plaintiff and served only her own self-interest. This conclusion reflects on the first three factors outlined above. Our own review of the documents released confirms the district court's conclusion. Few of the documents bore even an arguable relationship to Young's allegations of misconduct, and it is only those allegations of misconduct which might arguably be of public interest. At oral argument, counsel for Young was specifically asked by the court to identify documents which might be of public interest and he could not.* As the SenateConference Committee noted, in such cases, an award of attorney fees is seldom warranted.
 
 
 23
 With respect to the fourth factor, the district court concluded the CIA had a reasonable and legally sufficient basis for the FOIA exceptions and there was no indication the initial failure to turn over some documents was an attempt to thwart the FOIA policies. Plainly, the CIA released all documents voluntarily and there is no indication, other than a somewhat excessive delay in responding to Young's administrative complaint, that the CIA was acting to"avoid embarrassment or to frustrate the requestor." S.Rep. No. 93-584, 93d Cong., 2d Sess. (1974).
 
 
 24
 In conclusion we find the district court's conclusions with respect to the criteria for awarding attorney's fees to be fully supported by the record and there was no abuse of discretion in denying Young's request for attorney's fees. The judgment of the district court is hereby affirmed.
 
 AFFIRMED
 
 
 *
 Q: Can you identify any of that material that would be a public, as opposed to a purely private interest
 A: ... it has attracted the interest of the press ... [it] discussed allegations of malfeasance. Some of the documents she requested relate to malfeasance. These documents ... tended to show [malfeasance] none of the documents discussed the travel employees actually took.... Q: Now, I think [this] is crucial ... I've asked you to demonstrate to me how the public interest is benefitted.
 A: It discusses the reasons for her firing, for example, Congress has expressed great interest ... in the plight of whistle-blowers [and] she is clearly in the whistle-blower status.
 Q: Can you cite me to a document that you think supports your position, which, as I understand it is that she was fired in part for being a whistle-blower?
 A: Perhaps if I went back and looked at the documents that I think I could file a supplemental brief and point you to that but I can't do it right in front of you.
 Our own review of the documents disclosed to Young indicates that they do not avail her position.