Richard S. KAYE, Plaintiff,

v.

Arthur F. BURNS, Board of Governors of the Federal Reserve System and Theodore E. Allison, Defendants.

No. 75 Civ. 1873.

United States District Court, S. D. New York.

April 5, 1976.

Alexander, Katz & Rosenberg by John M. Burns, III, New York City, for plaintiff.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., by Stuart I. Parker, Asst. U. S. Atty., New York City, for defendants.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff has moved for an order, pursuant to 5 U.S.C. § 552(a)(4)(E), assessing against the defendants attorneys' fees and litigation costs incurred by the plaintiff. The motion is denied, and the action is hereby dismissed as moot.

## FACTS

This action was brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(B), to obtain disclosure of certain records of the Federal Reserve System. Defendant Arthur F. Burns ("Burns") is the Chairman of the Board of Governors of the Federal Reserve System ("Board"), and defendant Theodore E. Allison ("Allison") is the Secretary of the Board of Governors and the person to whom plaintiff addressed his initial requests for the production and disclosure of Agency records.

On October 27, 1974, plaintiff demanded from defendants certain records relating to various acquisitions by, and other activities of the Equimark Corporation ("Equimark"). On December 7, 1974, plaintiff, by letter, made an additional demand for certain other documents. Both of these requests were honored with one exception—the Board refused to furnish a copy of a letter dated August 21, 1973, to Equimark Corporation, from Theodore E. Allison, Assistant Secretary of the Board, respecting Equimark's acquisition of six offices of First Provident Company, Inc. On December 17, 1974, Allison (then Secretary of the Board) wrote to plaintiff informing him that that letter, in the judgment of the Board's Legal Division, related to an examination report prepared by, on behalf of, and for the use of the Board, and was part of the Board's "investigatory files compiled for law enforcement purposes" and was not available by law to a party other than an agency. The letter went on to relate that, accordingly, the Board's staff was of the opinion that disclosure of the August 21, 1973 letter was not required by the Freedom of Information Act or the Board's Rules Regarding Availability of Information,[1] and that plaintiff could seek a formal ruling from the Board on his request. By letter dated December 24, 1974, plaintiff filed a formal appeal to the Board from its decision not to produce the letter.

Plaintiff's appeal was denied by the Board on January 17, 1975. The Board reiterated its position that the letter requested was exempt from disclosure under the Freedom of Information Act by virtue of 5 U.S.C. § 552(b)(7) and (8) of the Act which provide in pertinent part as follows:

1. See 5 U.S.C. § 522(a)(6)(A); 12 C.F.R. § 261.1 et seq.

"This section does not apply to matters that are—

"(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel;

"(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions."

It was the opinion of the Board that the letter in issue "related" to an examination report prepared on behalf of, and for the use of the Board within the meaning of exemption (b)(8) and that while the Board's primary responsibility was not as an investigative body, that role was "sometimes necessarily assumed as an incident to its regulatory responsibilities", and, as such, the letter was likewise exempt under exemption (b)(7) of the Act.

On January 9, 1975, plaintiff filed a new, formal request with the Board for the production of a copy of the written record prepared by a member or members of the staff of the Board of Governors of a summary of a meeting held in April of 1972 and attended by members of the Board's staff and Donald C. Bush, Counsel for Equimark Corporation.[2]

By letter dated January 11, 1975, Kaye clarified his request for summaries of the April, 1972 meeting and further requested that the Board conduct a "careful, thorough search" to locate the records requested.

On January 22, 1975, Allison responded to the request for the summary of the April, 1972 meeting. The pertinent portion of that letter is set out in the margin.[3]

2. Plaintiff Kaye's letter indicated that the subject of the meeting was Equimark's purchases in 1971, without the prior approval of the Board of Governors, of shares of voting stock of Funding Systems Corporation. Apparently, Kaye was led to believe that the April, 1972 meeting had taken place by virtue of an affidavit sworn to December 24, 1974, by Mr. Bush, which was submitted to the United States District Court for the Southern District of New York in a presently pending civil action, 74 Civ. 5628. The Bush Affidavit related, in pertinent part, as follows:

"3. In April of 1972 as counsel of Equimark, I personally met with and at the request of members of the staff of the Board of Governors of the Federal Reserve System and reviewed with them the acquisition by Equimark of shares of Funding Systems Corporation.

"The letter attached hereto and marked Exhibit A dated April 13, 1972 confirmed the discussions held with the staff of the Board of Governors of the Federal Reserve System and was filed at our suggestion as an official request by Equimark for approval of the purchases of shares of Funding Systems Corporation stock by Equimark."

3. Dear Mr. Kaye:

This responds to your letter of January 9, 1975 as supplemented by your letter of January 11, 1975, formally requesting, pursuant to the Freedom of Information Act, a copy of 'the written record prepared by a member' of the staff of the Board of Governors of a *summary of a meeting* held in April of 1972 attended by members of the staff and Donald C. Bush, Counsel, Equimark Corporation. Your letter of January 9, 1975 suggests that the subject of such a meeting was Equimark's purchase in 1971 of shares of Funding Systems Corporation and that such meeting gave rise to a letter dated April 13, 1972 to the Board from Mr. Bush. In the opinion of the Legal Division, any such document would be exempt from the disclosure requirements of the Freedom of Information Act as both an intra-agency memorandum and as part of an investigatory file compiled for law enforcement purposes. You may recall that the Legal Division by letter of August 7, 1974 advised you that the response to Mr. Bush's letter of April 13, 1972 would be exempt from disclosure under the Freedom of Information Act as part of an investigatory file compiled for law enforcement purposes. Had the

On March 4, 1975, following a further exchange of correspondence, Mr. Jeffrey M. Bucher, the Governor designated to consider appeals of persons denied access to agency records, responded to Mr. Kaye's hitherto unsatisfied document requests.

With respect to the request for the summary of the April, 1972 meeting, the Bucher letter indicated that notwithstanding the Board's earlier position that such a summary would be exempt under the (b)(7) investigatory exemption, see note 3, *supra,* the request could not be complied with in any event since a search of the Board's records had disclosed no summaries of that meeting.[4]

With respect to the August 21, 1973 letter, the Board retreated somewhat from its earlier position, noting that "it appears that it is no longer appropriate to rely on the exemption for investigatory files", and that while the letter might have been an investigatory record within the meaning of § 552(b)(7), as amended, the production of the letter would not bring about any of the consequences specifically enumerated in clauses (A)–(F) of that newly amended section. Nevertheless, the Board was of the view that the 1974 amendments to the Freedom of Information Act had not altered the applicability of § 552(b)(8) to the letter. Since the letter in question related to matters raised in a joint examination of Equimark Corporation and its subsidiaries conducted by the Federal Reserve Banks of Cleveland, New York and Richmond pursuant to the Board's authority under section 5(c) of the Bank Holding Company Act, 12 U.S.C. § 1844(c) to "make examinations of each bank holding company and each subsidiary thereof", the Board reaffirmed its view that the August 21, 1973 letter related to an examination report prepared by, on behalf of, and for the use of the Board which was responsible for the regulation and supervision of financial institutions. Again, plaintiff's request for production of the letter was denied.[5]

On April 18, 1975, plaintiff commenced this action to obtain a preliminary and final injunction against the improper withholding of the documents which the Board had refused to furnish—i. e., the summaries of the April, 1972 meeting and the Allison letter of August 21, 1973.[6]

Finally, on June 16, 1975—some two months after the commencement of the action—the United States Attorney provided to the plaintiff a copy of the August 21, 1973 letter. The letter, from the secretary of the Board of Governors of the Federal Reserve System to the president of Equimark, advised Equimark that the Board had referred the alleged unlawful acquisition by Equimark of assets of First Provident Company, Inc. to the Criminal Division of the Department of Justice for appropriate action. The Board alleges, and plaintiff does not dispute the fact that on June 16, 1975, the Justice Department's criminal investi-

meeting you referred to been held, any summary of the discussions at such meeting would obviously be part of the same investigatory file."

4. In objections to interrogatories filed by the Board on August 20, 1975, and in the accompanying affidavits of Julius L. Loeser, Senior Attorney, Legal Division, Board of Governors of the Federal Reserve System, and Baldwin B. Tuttle, Assistant General Counsel, Board of Governors of the Federal Reserve System, the Board reiterated its position that the April, 1972 meeting summaries sought by the plaintiff had been searched for and did not exist. The Board did furnish a summary of a meeting held on March 15, 1972, which although not requested by the plaintiff, was provided on the assumption that plaintiff might have been in error as to the date of the meeting for which the summaries were sought. *See* affidavit of Stephen L. Siciliano, Senior Attorney, Legal Division, Board of Governors of the Federal Reserve System, submitted in connection with defendants' objections to interrogatories.

5. This determination constituted final Board action with respect to this matter, and the Board notified plaintiff of his right to seek judicial review of that determination. See 5 U.S.C. §§ 552(a)(4)(B), (a)(6)(A)(ii), and (a)(6)(C).

6. On May 21, 1975, defendants filed their answer setting forth in their first affirmative defense that the meeting summaries did not exist, and in their second affirmative defense that the August 21, 1973 letter was exempt from disclosure pursuant to 5 U.S.C. § 552(b)(8).

gation of Equimark ended when Equimark pleaded guilty to an indictment returned by a federal grand jury in Baltimore, Maryland on that day. Since the June 16th indictment in effect made public the contents of the letter, the Board authorized its immediate disclosure to the plaintiff, and a copy of the letter was mailed to the plaintiff on June 16, 1975. During the pendency of the criminal investigation of Equimark, the Board had been requested by the Criminal Division of the Department of Justice not to make the letter public. *See* affidavit of Stuart I. Parker, Assistant United States Attorney, sworn to November 14, 1975, at ¶¶ 5–6.

Several points emerge from this rather detailed recitation of the facts. First, it is clear that plaintiff has expended considerable time and effort to obtain the documents and records sought. Second, it is equally clear that the underlying action under the Freedom of Information Act to compel the Board's production of documents is now (and has been since June 16, 1975) moot in the sense that there is no longer an active case or controversy within the meaning of Article III of the Constitution. *See SEC v. Medical Committee for Human Rights,* 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972); *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1950–51, 23 L.Ed.2d 491, 502 (1969); *see generally,* 13 Wright, Miller and Cooper, *Federal Practice and Procedure* § 3533 (1975 ed.).

With respect to the demand for summaries of the April, 1972 meeting, the Board has alleged, and plaintiff has apparently conceded that such summaries do not exist.

In addition, the other document upon which plaintiff instituted his action— the letter of August 21, 1973—has been produced by the Board. Consequently, this action is hereby dismissed as moot.

The issue remaining before us is whether plaintiff is entitled to recover attorneys'

fees and litigation costs in bringing this suit.

*Discussion*

I.

Section 552(a)(4)(E) of the Freedom of Information Act, as amended, provides for the recovery of attorney fees as follows:

"(E) The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." [7]

The government first argues that since this action is now moot, plaintiff cannot be said to have "substantially prevailed" within the meaning of the statute, and the application for attorneys' fees must consequently be denied. I disagree.

It is clear from the legislative history of the 1974 amendments to the Freedom of Information Act that Congress intended courts to look to the case law under other federal statutes providing for the award of attorneys' fees in determining whether a party has "substantially prevailed" within the meaning of the Act. *See* S.Rep.No.93–854, 93rd Cong., 2d Sess., March 16, 1974, reprinted in Joint Committee Print, 94th Cong., 1st Sess. (March 1975) (hereinafter "Joint Committee Print"), at p. 170. *See also,* H.R.Rep.No.93–876, 93rd Cong., 2d Sess., March 5, 1974, in Joint Committee Print, at p. 127, U.S.Code Cong. & Admin. News 1974, p. 6267. The statutes referred to include Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a–3(b); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k); Emergency School Aid Act of 1972, 20 U.S.C. § 1617; Clean Air Act of 1970, 42 U.S.C. § 1857–h–2(d); Fair Housing Act of 1968, 42 U.S.C. § 3612(c); and the Truth in Lending Act, 15 U.S.C. § 1640.

It appears from the case law under these various statutes that the legislative intent

---

7. It is clear, that absent such statutory authorization, attorneys' fees could not be awarded. *See Alyeska Pipeline Service Co. v. Wilderness*

*Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

was to limit the discretionary award of costs and attorneys' fees to those parties who were successful in court. *See Williams v. General Foods Corp.,* 492 F.2d 399, 408 (7th Cir. 1974). Thus, fees cannot be awarded where the plaintiff has prevailed before an administrative body prior to the commencement of a lawsuit, *Mello v. Secretary of Health, Education and Welfare,* 8 EPD ¶ 9620 (D.D.C.1974), or where there has been an actual effect on corporate policy independent of the consummation of a court controversy, *Williams v. General Foods Corp., supra,* 492 F.2d at 408.

It is inconceivable, however, that the recovery of attorneys' fees could be foreclosed whenever the government chooses to moot an action under the Freedom of Information Act by supplying, during the pendency of the litigation, the material sought in the complaint. This is particularly true in light of the fact that the 1974 amendment to the Freedom of Information Act providing for the assessment of attorneys' fees and costs was based, at least in part, on the demonstrated experience that few individuals could afford the expense of litigating a suit under the Freedom of Information Act, even though the agency's decision to withhold information might be clearly unlawful. *See* S.Rep.No.93–854, 93rd Cong., 2d Sess., May 16, 1974, in Joint Committee Print, at p. 169; H.R.Rep.No.92–1419, 92nd Cong., 2d Sess., September 20, 1972, in Joint Committee Print, at p. 80. To hold otherwise would be to inject an "absurd requirement" into the statute—i. e., that a case necessarily proceed to final judgment before an award of attorneys' fees may be made. *See ASPIRA of New York Inc. v. Board of Ed. of City of N.Y.,* 65 F.R.D. 541, 543 (S.D.N.Y. 1975).[8]

Furthermore, the salutary purposes of the statute to encourage voluntary compliance with the FOIA, and to encourage suit where an agency has wrongfully withheld requested material could be too easily rendered nugatory if the government could force a party into litigation and then deprive that party of the right to recover expenses incident to bringing the action. In my view, this issue is closely analogous to the "capable of repetition, yet evading review" standard adopted by the Supreme Court for reviewing discontinued activity. *Southern Pacific Terminal Company v. Interstate Commerce Commission,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310, 316 (1911). *See Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 712–13, 35 L.Ed.2d 147, 161 (1973); *Dunn v. Blumstein,* 405 U.S. 330, 333, n.2, 92 S.Ct. 995, 998, 31 L.Ed.2d 274, 279 (1972). Without such a rule, certain forms of official action, because of the nature of the processes regulated, would never come under judicial scrutiny to test whether such governmental conduct comports with constitutional standards. Just as the right to judicial review is not necessarily defeated because of the discontinuance of the activity in issue, so too, rights collateral to a lawsuit—such as the right to recover costs and attorneys' fees—cannot be defeated because of the discontinuance of the underlying action. *Cf. Powell v. McCormack, supra,* 395 U.S. at 498–99, 89 S.Ct. at 1951–52, 23 L.Ed.2d at 503–04.

Consequently, I believe that a proper construction of the "substantially prevailed" requirement of § 552(a)(4)(E), in light of that statute's legislative history and intent, would not preclude the recovery of attorneys' fees and litigation costs where the government, after commencement of the litigation, has acted to moot the action by supplying the material sought.

---

**8.** In ASPIRA, *supra,* Judge Frankel permitted the recovery of attorneys' fees, finding that plaintiffs were, "in any apposite and meaningful sense, the 'prevailing parties' ", within the meaning of § 718 of the Emergency School Aid Act, 20 U.S.C. § 1617. 65 F.R.D. at 542. After protracted adversarial proceedings, the parties entered into a detailed consent decree. Despite the fact that the case was thereby mooted, Judge Frankel granted attorneys' fees, noting that no one would contend that a case "must be fought to the last ditch" before § 718 could apply.

## II.

■ The government next argues that even if attorneys' fees are recoverable, this is not a proper case in which the court should exercise its discretion to make such an award.

The Senate version of the attorneys' fee provision specified four criteria to be considered by the court in exercising its discretion:

(1) The benefit to the public, if any deriving from the case,

(2) the commercial benefit to the complainant;

(3) the nature of the complainant's interest in the records sought; and

(4) whether the government's withholding of the records sought had a reasonable basis in law.

With regard to these criteria, the Senate Report noted:

"Under the first criterion a court would ordinarily award fees, for example, where a newsman was seeking information to be used in a publication or a public interest group was seeking information to further a project benefitting the general public, but it would not award fees if a business was using the FOIA to obtain data relating to a competitor or as a substitute for discovery in private litigation with the government.

Under the second criterion a court would usually allow recovery of fees where the complainant was indigent or a nonprofit public interest group . . . but would not if it was a large corporate interest (or a representative of such an interest). For the purposes of applying this criterion, news interests should not be considered commercial interests.

Under the third criterion a court would generally award fees if the complainant's interest in the information sought was scholarly or journalistic or public-interest oriented, but would not do so if his interest was of a frivolous or purely commercial nature.

Finally, under the fourth criterion a court would not award fees where the government's withholding had a colorable basis in law but would ordinarily award them if the withholding appeared to be merely to avoid embarrassment or to frustrate the requester. Whether the case involved a return to court by the same complainant seeking the same or similar documents a second time should be considered by the court under this criterion.

In the above situations there will seldom be an award of attorneys' fees when the suit is to advance the private commercial interests of the complainant. In these cases there is usually no need to award attorneys' fees to insure that the action will be brought. The private self-interest motive of, and often pecuniary benefit to, the complainant will be sufficient to insure the vindication of the rights given in the FOIA. The court should not ordinarily award fees under this situation unless the government officials have been recalcitrant in their opposition to a valid claim or have been otherwise engaged in obdurate behavior."

S.Rep.No.93–854, 93rd Cong., 2d Sess., May 16, 1974, in Joint Committee Print, at p. 171.[9]

Utilizing these criteria as a guide in exercising my discretion under § 552(a)(4)(E), I am of the view that attorneys' fees and

---

9. These criteria for the award of costs and attorneys' fees were eliminated from the final bill by the conference committee. As the Senate report makes clear, by eliminating these criteria, the conferees did not intend to make the award of attorney fees automatic or to preclude the courts, in exercising their discretion as to awarding such fees, from taking such criteria into consideration. Instead, the confer-ees believed that because the existing body of law on the award of attorney fees recognized such factors, a statement of the criteria incorporated into the statute might be too delimiting and was unnecessary. See Committee of Conference, H.R.Rep.No.93–1380, 93rd Cong., 2d Sess., September 25, 1974, in Joint Committee Print, at p. 227.

litigation costs are not recoverable under the facts of this case. First, the government's decision to withhold the letter of August 21, 1973 (until its production subsequent to Equimark's indictment) had a reasonable basis in law.

The Freedom of Information Act requires disclosure, upon request, of identifiable agency records, unless such records fall within one of the nine specific exemptions in the Act. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). 5 U.S.C. § 552(b)(8) exempts from disclosure under the Freedom of Information Act matters which are:

> "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions."

This exemption was "designed to insure the security and integrity of financial institutions, for the sensitive details collected by Government agencies which regulate these institutions could, if indiscriminately disclosed, cause great harm." *See* H.R.Rep. No.89–1497, 89th Cong., 2d Sess., May 9, 1966, at p. 11.

Equimark is a registered bank holding company subject to the regulation and supervision of the Federal Reserve Board. While the letter at issue was not an examination report, the conclusion expressed in the letter—that Equimark had willfully violated the Bank Holding Company Act—was based, in part, on an examination report prepared by the Board on Equimark. *See* Affidavit of Stuart I. Parker, Assistant United States Attorney, sworn to November 14, 1975, at ¶ 4. In effect, the letter disclosed the findings contained in the examination report.

I am mindful of the fact that whenever governmental records are withheld, the burden of establishing their exemption from mandatory disclosure rests with the agency, 5 U.S.C. § 552(a)(3), and that the exemptions under the Act are to be narrowly construed. *See, e. g., Rose v. Department of Air Force,* 495 F.2d 261, 263 (2d Cir. 1974), *cert. granted,* 420 U.S. 923, 95 S.Ct. 1115, 43 L.Ed.2d 392 (1975); *Washington Research Project, Inc. v. Department of H.E.&W.,* 164 U.S.App.D.C. 169, 504 F.2d 238, 244 (1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975); *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 484 F.2d 820, 823 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974); *Kreindler v. Department of Navy,* 363 F.Supp. 611, 613 (S.D.N.Y.1973). Nevertheless, while I need not hold that the letter was exempt under exemption b(8), I am of the view that the Board had at least a reasonable basis in law for concluding that the letter in issue was exempt from disclosure under § 552(b)(8) in that it contained matter in an examination report, and was a record "related to" an examination report.[10]

---

10. It is also at least arguable that the letter in issue was exempt from disclosure under 5 U.S.C. § 552(b)(7) as an investigatory record compiled for law enforcement purposes, the production of which would "(A) interfere with enforcement proceedings, [and] (B) deprive a person of a right to a fair trial or an impartial adjudication . . . ". However, prior to the commencement of this lawsuit the Board had apparently abandoned its position that the Allison letter of August 21, 1973, was exempt as an investigatory record. Consequently, I need not reach this issue.

Furthermore, it may well be that this court has broad equitable power, notwithstanding the specific statutory exemptions of the FOIA, to decline to order the release of agency documents when such disclosure would damage the public interest. *See, e. g., Rose v. Department of Air Force, supra,* 495 F.2d at 269 and note 23, and cases therein cited; *Theriault v. United States,* 503 F.2d 390, 392 (9th Cir. 1974); Davis, *The Information Act: A Preliminary Analysis,* 34 U.Chi.L.Rev. 761, 767 (1967). *Cf. Renegotiation Board v. Bannercraft Clothing Co., Inc.,* 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974). Given the strong public policy favoring the secrecy of grand jury deliberations, and the formidable judicial protections accorded to them, *see, e. g., United States v. Proctor & Gamble Co.,* 356 U.S. 677, 681–82, n.6, 78 S.Ct. 983, 985–86, 2 L.Ed.2d 1077, 1081–82 (1958), and to the targets of grand jury investigations, *United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617–18, 38 L.Ed.2d 561, 568–69 (1974); Kaufman, *The Grand Jury—Its Role and Its Powers,* 17 F.R.D. 331, 333 (1954), such an exercise of equitable discretion in allowing the Board to withhold production may have been particularly appropriate here had the letter not been produced prior to the public disclosure of Equimark's indictment.

Second, there is little doubt that this action was brought to further plaintiff's commercial interest. Plaintiff has been in litigation before this court with both Equimark Corporation and Funding Systems Corporation since December, 1974, *Kaye v. Funding Systems Corporation and Equimark Corporation,* 74 Civ. 5628. The Freedom of Information Act action was doubtless related to the discovery in plaintiff's dispute with Equimark and Funding Systems. As such, there has been little, if any, benefit to the public by virtue of plaintiff's action.

These two factors—the reasonable basis for the Board's decision to withhold production of the letter until Equimark's indictment had been made public, and the private commercial nature of the benefit sought by the plaintiff in obtaining the agency records—are sufficient to warrant a denial of plaintiff's motion for costs and attorneys' fees.

SO ORDERED.