**Nelson Kyle STEENLAND, Plaintiff,**

v.

**CENTRAL INTELLIGENCE AGENCY, Washington, D.C., and George Ball, Individually and in his capacity as Director, Central Intelligence Agency, Washington, D.C.; Federal Bureau of Investigation, Washington, D.C., and Clarence M. Kelly, Individually and in his capacity as Director, Federal Bureau of Investigation, Washington, D.C.; United States Department of Justice, Washington, D.C., and Edward H. Levi, Attorney General of the United States, Washington, D.C.; Department of States, Washington, D.C., and Henry Kissinger, Individually and in his capacity of Secretary of State, Washington, D.C., Defendants.**

**No. CIV–76–548.**

United States District Court,
W.D. New York.

Jan. 28, 1983.

Barbara Ellen Handschu, Buffalo, N.Y., for plaintiff.

Salvatore R. Martoche, U.S. Atty., C. Donald O'Connor, Asst. U.S. Atty., Buffalo, N.Y., for defendants.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

This action was brought by plaintiff under the Freedom of Information Act ("the FOIA"), 5 U.S.C. § 552, to obtain the release of records maintained on him by the Federal Bureau of Investigation ("the FBI"), the Central Intelligence Agency ("the CIA"), and the State Department.[1] Shortly after the commencement of suit plaintiff received substantial records from the FBI and the CIA. Plaintiff continued his pursuit of full disclosure which defendants resisted upon the ground that the unreleased materials were exempted from disclosure under the FOIA. By my Memorandum and Order of October 13, 1978, I denied the motions of the FBI and the CIA for dismissal or summary judgment and ordered that I be provided with affidavits sufficiently detailed so as to allow me to determine the merits of the claimed exemptions. The defendants instead supplied complete and unredacted records for *in camera* inspection. Based on that inspection, I determined that the defendants' refusal to release additional materials was justified by various exemptions provided by the FOIA. By Memorandum and Order of August 3, 1981 I therefore dismissed plaintiff's complaint, while reserving his right to seek attorney's fees. Plaintiff's application for same is now before me.

Under section 552(a)(4)(E) of the FOIA a court is authorized to assess attorney's fees and litigation costs against the government upon a finding that the complainant has substantially prevailed. Although final judgment for the complainant is not a condition precedent to such an

1. The action against the State Department was dismissed by my Order of October 13, 1978 upon stipulation of the parties.

award, the award is not to be granted automatically upon the government's voluntary release of some or all of the requested material following the commencement of suit under the Act. *Vermont Low Income Advocacy Council, Inc. v. Usery,* 546 F.2d 509, 513–514 (2d Cir.1976). It is still incumbent upon the plaintiff to establish that "the prosecution of the action could reasonably have been regarded as necessary and that the action had substantial causative effect on the delivery of the information." *Id.,* at 513.

When a suit becomes reasonably necessary is not a matter subject to precise determination. While expiration of the statutory time limits for compliance or denial of a request entitles the complainant to seek judicial relief, it does not follow that the complainant is equally entitled to reimbursement for the costs incurred in doing so. *Ibid.* Nonetheless the outer limits may be determined by reference to *Vermont Low Income,* in which plaintiff is described as making the veritable rush to the courthouse door, despite "the promise of amicable resolution," (*Id.,* at 514) and *Goldstein v. Levi,* 415 F.Supp. 303 (D.D.C.1976) (in which that plaintiff sought documents for over three years through administrative channels prior to commencing litigation and the release of the information requested followed within several weeks).

The circumstances of the instant case place it somewhere between the extremes represented by *Vermont Low Income* and *Levi.* Unlike the plaintiff in *Vermont Low Income* the instant plaintiff can hardly be accused of rushing to seek judicial relief. The latter patiently, though persistently, pursued relief through administrative channels for over sixteen months. Although he succeeded in obtaining the release of some of the records sought, the agencies' responses did not contain a promise of amicable or speedy resolution as to the remaining material. While he received some explanation for the delayed processing of his initial requests and subsequent appeals, the excuse of a backlog of requests requiring indefinite delays is distinguishable from the short period of time necessary to find a misplaced file, the source of the delay in *Vermont Low Income.*

The reasonableness of plaintiff's initiation of court action is perhaps most clearly established by the relatively prompt release of records which followed the institution of suit, the timing and circumstances of which also establishes the second element required under *Vermont Low Income* of a causal nexus. This suit was commenced November 24, 1976. In March, 1977 both the FBI and the CIA released a substantial amount of additional materials. While the FBI contends that the release occurred solely as a result of the ongoing administrative review process, the timing of the release supports an inference that the commencement of suit substantially affected the speed with which the review was conducted, if not the actual decision to produce the supplemental material. *See, Exner v. Federal Bur. of Investigation,* 443 F.Supp. 1349 (S.D.Cal.1978).

The FBI's argument relies on a letter, Defendants' Exhibit J, from Richard L. Thornburgh, the erstwhile Acting Deputy Attorney General, by which plaintiff was advised that a limited supplemental release had already or would soon be made directly by the FBI. The FBI presumes that the letter was sent prior to the filing of this action. The letter is, however, undated. For several reasons I believe it was in fact mailed in or about March, 1977. First, plaintiff's complaint states that at the time the suit was filed, he had received no notification as to the outcome of his administrative appeal. *See,* Complaint, ¶ 31. That fact was admitted by defendant's answer. *See,* Answer, ¶ 10. Exhibit J is described by its author as a determination to affirm the decision of the FBI as modified and clearly implies that it was drafted after the filing of this Complaint. Moreover, a March 18, 1977 letter from the FBI refers to an explanatory letter from the Deputy Attorney General which was to be forthcoming, if not already received. The only letter from the Deputy Attorney General is Exhibit J. Clearly, both authors presumed that the other's letter closely preceded or

followed his own. That they did in fact is corroborated by the records of plaintiff's counsel, submitted in support of this application for fees. Included in counsel's accounting of services rendered is the notation "3/4/77 Review Letter from Thornburgh."

The only conclusion which can reasonably be drawn is that Exhibit J was sent shortly before the release of additional materials in March, 1977, after and not before the initiation of this action. I therefore deduce and hold that the initiation of this action pressed the Department of Justice to act on plaintiff's request and to reconsider the FBI's earlier determination. Such inference has not been rebutted by defendant. *Cf., Marschner v. Department of State, Etc.,* 470 F.Supp. 196, 200 (D.Conn.1979).

As to the CIA, the affidavit of Gene F. Wilson, Information and Privacy Coordinator for that agency, clearly establishes a nexus between this litigation and the supplemental release of materials by that agency in March, 1977. That agency's initial response to plaintiff's FOIA request came on November 17, 1975 with the release of certain redacted records. After the commencement of this action, "[i]n an effort to accommodate plaintiff further, the Office of General Counsel of the Central Intelligence Agency undertook another review of the relevant CIA documents * * *," according to the affiant. While this defendant maintains that the additional release of information was not possible until receipt of an authorization from plaintiff's spouse, the release was not requested until December, 1976, after the commencement of litigation.

■ Based on the foregoing I have little doubt that this action prompted a "second look" by both the FBI and the CIA and substantially resulted in the supplemental releases. Plaintiff having satisfied both of the criteria enunciated in *Vermont Low Income,* I find that he substantially prevailed in obtaining additional materials as a result of this action.

There are, however, other factors which must be considered in determining the ap-

propriateness of an award of attorney's fees. The legislative history of the 1974 amendment authorizing fee awards indicates that the Senate version had specified four criteria to be used as guides in the court's exercise of its discretion. The factors are the public benefit (if any) resulting from disclosure, the commercial benefit to the plaintiff from the information, the nature of plaintiff's interest in the materials sought and whether the government's resistance was grounded on a reasonable basis in law. *See,* discussion in *Vermont Low Income, supra,* at 512–513.

The factors were deleted from the final version, as unnecessary and too delimiting, but have been frequently applied in subsequent litigation. *See, e.g. Cuneo v. Rumsfeld,* 553 F.2d 1360 (D.C.Cir.1977). The first three factors are closely related and reflect various aspects of the question who most benefitted from the information, the plaintiff (in which case he should bear the cost of suit) or the public (in which case the expense should be shifted to the taxpayers generally via the defendant agencies).

Defendants assert that the only public interest advanced by plaintiff is the general benefit attendant to public disclosure under the Act, which is too broad a criterion to justify disclosure in any given case, lest the court's discretion be so eroded as to require fees in every case. *Blue v. Bureau of Prisons,* 570 F.2d 529 (5th Cir.1978) (prisoner's access to his own case file retained by the Bureau of Prisons). I believe that the interest here is more narrowly drawn—namely, to the extent and propriety of government surveillance of political activists. As such, it falls within those cases "where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Blue, supra,* at 534. To the extent that this plaintiff was also concerned with the effect of the FBI's inquiries to the State University of New York at Buffalo concerning plaintiff's subsequent dismissal from that institution, his concern was in part private in nature. At the same time, however, the public surely has an interest in the effect of political

activities on employment. In any event, it would be wholly inappropriate to characterize plaintiff's interest as predominately commercial. *Compare, Fenster v. Brown,* 617 F.2d 740 (D.C.Cir.1979) (affirming denial of fees in light of "enormous" commercial interest of plaintiff in disclosure of government manual), and *Kaye v. Burns,* 411 F.Supp. 897 (S.D.N.Y.1976) (fees withheld because of government's reasonable basis in law and because of the clear commercial interest of plaintiff in obtaining information for use in pending litigation). Nor do I believe that the plaintiff's interest can be categorized as mere curiosity. The nature of the activities surveilled by the government and the very persistence with which plaintiff has pursued this matter belie any such characterization.

As to the reasonable basis of the government's resistance, my Memorandum and Order of October 13, 1978 precludes any assertion of unreasonableness as to the matter discussed herein. However, with regard to the materials released shortly after the commencement of this litigation, the reasonableness of the long delay which preceded such divulgence is less clear. While I am not uncognizant of the burden placed on the government in complying with numerous requests, that burden cannot be raised as a shield to justify indefinite delays. Here, the final release of materials did not occur until over a year and a half after the initial request, but within four months of the commencement of the suit. Moreover, the asserted cause of the delay is not, as in *Vermont Low Income,* an error particular to this suit but merely the generalized problem of administrative workload. Although counsel implies that the material released in March was marginally exempt, he offers no further support for that contention such as to establish the necessary reasonable basis in law for the initial claim of exemption. Even if I were to find that such a basis could have been properly asserted, my findings as to other factors "affirmatively justify an award" in this case. *See, Nationwide Building Maintenance Inc. v. Sampson,* 559 F.2d 704, 712 n. 34 (D.C.Cir.1977).

Given the somewhat unusual facts of this case, however, I cannot justify an award of fees and costs incurred during the entire course of this lawsuit. I do not question the sincerity of plaintiff's decision to pursue full release of the files maintained on him by the defendant agencies but, to the extent that the remaining materials were deemed exempt, an allowance of fees for work performed after the March 18, 1977 release would assess a penalty against defendants which is clearly unwarranted. Nor can it be said that the purpose of the Act would be furthered by a full award. The public cannot be said to have benefitted from the unsuccessful challenge to the remaining exemptions. Moreover, plaintiff did not prevail to any extent in his claim against the Department of State and, as to this agency, no fees will be assessed.

Defendants have not objected to the rate of fees requested by counsel and, because I consider such to be not unreasonable in light of her experience and reputation and her performance in this action, such rate will be allowed. I will also allow counsel to claim hours spent in preparation of the instant motion. I am unsure as to which of the claimed costs were incurred prior to the final release of material March 18, 1977. In order to clarify this point, counsel for plaintiff is directed to submit a supplementary affidavit.

Based on the foregoing reasons, plaintiff's application for an award of attorney's fees and costs is hereby ORDERED granted in part and denied in part. Plaintiff is directed to submit an amended accounting of costs and fees incurred for a computation of the amount of the award, the costs of which will be shared equally by the defendants FBI and CIA. No costs or fees will be allowed on or because of such further accounting.