593 F.Supp. 71 (1984)
Lynda LACY and Lynda Lacy, as Administratrix of the Estate of Michael Scott Lacy, deceased and Lynda Lacy, to the use of Kevin Scott Lacy and Patricia Stanley, Individually and as Administratrix of the Estate of Rowland de Graff Stanley, deceased and L. de Graff Stanley and Marianne Stanley
v.
UNITED STATES DEPARTMENT OF THE NAVY, an agency of the United States.
Civ. A. No. M-83-2727.
United States District Court, D. Maryland.
June 14, 1984.
*72 Francis B. Burch, Jr. and Piper and Marbury, Baltimore, Md., and William D. Blakely and Lewis, Mitchell & Moore, Washington, D.C., for plaintiff Lacy.
Edwin T. Steffy, Jr., Baltimore, Md., and Donald L. Salem and Luce, Forward, Hamilton & Scripps, San Diego, Cal., for plaintiffs Stanley.
J. Frederick Motz, U.S. Atty. for the D. Md. and Elizabeth H. Trimble, Asst. U.S. Atty., Baltimore, Md. for defendant.

MEMORANDUM AND ORDER
JAMES R. MILLER, Jr., District Judge.
On July 19, 1983, the plaintiffs, Lynda Lacy, individually and as administratrix of the estate of Michael Lacy, and to the use of Kevin Scott Lacy; Patricia Stanley, individually and as administratrix of the estate of Rowland de Graff Stanley; L. de Graff Stanley; and Marianne Stanley, filed a complaint under the Freedom of Information Act, 5 U.S.C. § 552 (hereinafter referred to as the FOIA), seeking therein a preliminary and final injunction directing the defendant, the United States Department of the Navy, to make available to the plaintiffs all photographs related to the airplane accident on January 26, 1980, involving Major Rowland Stanley and Chief Petty Officer Michael Scott Lacy, and an award for attorneys' fees and costs and other relief. (Paper No. 1).
The plaintiffs filed a Motion for Summary Judgment in support of their position that all photographs regarding this incident held by the Navy should be produced and that the plaintiffs are entitled to attorneys' fees and costs. (Paper No. 7). On February 13, 1984, the defendant filed a Cross Motion for Summary Judgment indicating therein that the plaintiffs had been furnished with all photographs in the Navy's possession and opposing any award of fees or costs. (Paper No. 9). The plaintiffs filed a response to the defendant's cross motion. (Paper No. 10). After reviewing the memoranda in support of these motions, the court concludes that a hearing is unnecessary. Local Rule 6(E).

I. Background

On January 26, 1980, a KA-3B aircraft, while on its final approach for landing at the Patuxent River Naval Air Station (NAS), Patuxent River, Maryland, crashed killing its pilot, Major Stanley, and navigator, Chief Petty Officer Lacy.
Following the crash, several investigators traveled to the site of the accident and gathered facts for their respective reports. Commander M. Concannon presided over the Mishap Investigation Board, the factual findings and recommendations of which were ultimately published in a Mishap Investigation Report (hereinafter referred to *73 as the "MIR"). Commander Stuart Fitrell headed the investigation for the Judge Advocate General of the Navy, referred to as the JAGMAN investigation. The several hundred page JAGMAN report included findings of fact and opinions regarding the cause of the mishap and ways to prevent its reoccurrence. The JAGMAN report and the MIR included photographs. In addition to the above two investigations, a Naval Safety Center Investigation was conducted by Commander James N. Vreeland of the Naval Safety Center (NAS). Commander Vreeland took polaroid photographs and used other photographs during his investigation. Also present at the crash site were members of the Armed Forces Institute of Pathology (AFIP) whose primary purpose was to prepare pathological reports regarding the decedents. AFIP photographers obtained a large number of photographs of the crash site.
After the investigations at the crash site were completed, several parts of the airplane wreckage were transported to a hanger for additional review. After the MIR and the JAGMAN reports were finalized, most of the wreckage was destroyed through the Navy's salvage process. Plaintiffs' counsel were provided some of the wreckage.
Litigation was commenced the following year in the Maryland state courts by the representatives of the estates of the deceased crew members against McDonnell Douglas Corporation, the designer and manufacturer of the KA-3B wing flap system, assemblies and subassemblies which allegedly caused the unexpected roll and impact of the plane. To gather the facts surrounding the accident, counsel for the plaintiffs filed FOIA requests with the Navy.
On August 30, 1982, plaintiff Lacy by her counsel filed her first FOIA request with the Office of the Judge Advocate General requesting therein several items concerning the subject crash including all photographs and investigative reports in the possession of the United States, its agencies and/or employees. (Paper No. 9, Attachment G, Enclosure 1, ¶¶ 9 & 19). This FOIA request was forwarded to the Naval Safety Center in Norfolk, Va., Naval Air Systems Command, the FAA, the National Transportation & Safety Board in Washington, D.C., the Naval Air Test Center in Patuxent River, Md., and the Naval Air Rework Facility in Alameda, Ca. (Id. Enclosure 3). In response to this August 1982 request, the Navy produced the photographs in the JAGMAN report (5) and those from the Naval Air Rework Facility (NARF), Alameda (15). (Paper No. 7, Exh. 16 ¶ 4).
Responding to the FOIA request for the Navy Safety Center, Rear Admiral T.C. Steele identified the MIR as the only relevant document on file at the Naval Safety Center and refused disclosure of the document in whole or in part. (Paper No. 9, Attachment G, Enclosure 7). That determination was upheld on appeal on December 28, 1982 by the Judge Advocate General of the Navy. (Id. Enclosure 17). Similarly, a request for production of the index to the MIR was denied by Rear Admiral Steele. (Id. Enclosures 12 & 16).
Through independent investigation, counsel for plaintiff Lacy learned that hundreds of photographs of the scene of the crash had been taken by the Patuxent River NAS photographic laboratory. These photographs were reviewed by counsel but photographs of the left wing flap assembly and subassemblies were missing. (Paper No. 7, Attachment 16, ¶ 7). Counsel for the plaintiffs also discovered that Commander Vreeland, previously unidentified by the Navy, had conducted an investigation of the subject crash. On March 30, 1983, plaintiffs' counsel made another FOIA request specifically requesting the investigative report and photographs of the accident from Commander Vreeland. (Paper No. 9, Attachment H, Enclosure 8; Attachment G, Enclosure 26).
In response, H.A. Petrich responded, admitting the administrative oversight in not identifying the Vreeland Report in response to the earlier FOIA requests, but refusing disclosure of the Vreeland Report. *74 (Paper No. 7, Attachments 10 & 11). Counsel appealed that decision (id. Attachment 12), and Rear Admiral Flynn refused the release of the Vreeland Report or the accompanying photographs (id. Attachment 13).
Counsel for the plaintiffs also sought at this time reconsideration of the Navy's decision not to produce the photographs attached to the MIR. (Id. Attachment 7). On July 18, 1983, counsel were informed that the position of the Navy regarding the confidentiality of the MIR, including any photographs, stated in the December 28, 1982 letter had not changed. (Id. Attachment 14; see also Id. Attachment 6). This suit followed immediately.
On December 13, 1983, the Navy produced for the plaintiffs the following photographs:
Category 1: xerographic reproductions of photographs taken by NARF, Alameda, California (previously disclosed by NARF, Alameda);
Category 2: reproductions of AFIP photos contained in Vreeland's file (23 in total);
Category 3: reproductions of photos taken by United States' naval photographers of NAS Patuxent River, Maryland (previously disclosed by Patuxent NAS);
Category 4: reproductions of Polaroid photos contained in Vreeland's files (21 in total); and
Category 5: reproductions of photos taken by AFIP (2 groups, 20 in first group and 57 in second group, 77 in total).
Although initially it seemed, through its submission of a group of photographs for in camera review, that the Government had not produced all requested photographs, it has become clear from the ensuing Cross Motion for Summary Judgment that, as the Government now states, the plaintiffs have received all the photographs in the possession of the Navy relating to this crash. The sole issue remaining is whether the plaintiffs are entitled to an award of attorneys' fees and costs.

II. Discussion

Under the FOIA, the district court with jurisdiction to review the FOIA dispute "may assess against the United States reasonable attorney fees and other litigations costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). In determining whether plaintiffs are entitled to an award of attorneys' fees and litigation costs under subsection (a)(4)(E), this court must determine whether plaintiffs are eligible for an award, and if so, whether they are entitled to such an award. Church of Scientology v. Harris, 653 F.2d 584, 587 (D.C. Cir.1981), citing Crooker v. United States Department of the Treasury, 663 F.2d 140, 141-42 (D.C. Cir.1980); Fenster v. Brown, 617 F.2d 740 (D.C. Cir.1979); Cox v. United States Department of Justice, 601 F.2d 1 (D.C. Cir.1979).

A. Eligibility

An FOIA plaintiff is eligible for an award of attorneys' fees and costs if he has "substantially prevailed." Nix v. United States, 572 F.2d 998, 1006 (4th Cir.1978). In order to "substantially prevail" however, a complainant in an FOIA suit need not necessarily obtain a court order forcing the agency to disclose the documents sought. Nationwide Building Maintenance v. Sampson, 559 F.2d 704, 710 (1977). The government cannot foreclose an award of attorneys' fees by releasing the documents during the pendency of the action, Cuneo v. Rumsfeld, 553 F.2d 1360, 1365 (1977); Kaye v. Burns, 411 F.Supp. 897, 902 (S.D.N.Y.1976), "but it is equally true that an allegedly prevailing party must assert something more than post hoc, ergo propter hoc." Cox v. Department of Justice, 601 F.2d 1, 6 (D.C. Cir.1979) (per curiam).
"[T]he party seeking such fees in the absence of a court order must show that prosecution of the action could reasonably be regarded as necessary to obtain the information, Vermont Low Income *75 Advocacy Council, Inc. v. Usery, [546 F.2d 509,] 513 [2d Cir.1976], and that a causal nexus exists between that action and the agency's surrender of the information, Cuneo v. Rumsfeld, supra 180 U.S.App.D.C. [184] at 190, 553 F.2d [1360] at 1366. Whether a party has made such a showing in a particular case is a factual determination that is within the province of the district court to resolve. In making this determination, it is appropriate for the district court to consider, inter alia, whether the agency, upon actual and reasonable notice of the request, made a good faith effort to search out material and to pass on whether it should be disclosed .... If rather than the threat of an adverse court order either a lack of actual notice of a request or an unavoidable delay accompanied by due diligence in the administrative processes was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in his suit."
Cox, 601 F.2d at 6, quoted in, Church of Scientology, 653 F.2d at 587-88. Compare Murty v. Office of Personnel Management, 707 F.2d 815, 816 (4th Cir.1983) (a telephone call of inquiry as to what had happened to the FOIA request would have produced the same result as the lawsuit); Vermont Low Income, 546 F.2d 509 (characterized as a vertible rush to the court-house despite the promise of amicable resolution) with Steenland v. C.I.A., 555 F.Supp. 907, 909-10 (W.D.N.Y.1983) (suit prompted a second look by the agency); Goldstein v. Levi, 415 F.Supp. 303 (D.D.C. 1976) (plaintiff sought documents for three years through administrative channels prior to litigation; the release of the information requested followed within weeks of filing suit).
In the present case, the plaintiffs filed suit to obtain from the Navy all the photographs of the subject crash and airplane parts. Suit was only filed after the plaintiffs' counsel had tried through numerous FOIA requests to obtain those photographs through administrative channels. Even when the Navy had overlooked the identification of the Vreeland report in response to the plaintiffs' earlier FOIA request, the plaintiffs attempted to obtain that report and any photographs therewith through administrative channels before resorting to bringing suit. Each time the plaintiffs were denied access to the subject of their requests, and specifically to their request for the photographs, the appeal process in administrative channels was used by plaintiffs' counsel before seeking judicial relief. Finally, after the Navy had denied all their requests and all of their appeals, and had specifically stated that the photographs the plaintiffs sought were exempt under 5 U.S.C. § 552(b)(5), the plaintiffs filed this suit at the end of July, 1983 to compel the production of the photographs.
On December 13, 1983, the Navy provided to the plaintiffs all of the photographs it had previously produced[1] along with 121 photographs which had not been previously provided. Of these 121 photographs, several were reproductions of AFIP photographs and 23 were Polaroid photographs contained in the Vreeland files. As Commander Breast's affidavit indicates, the photographs attached to the MIR, if any, would have been destroyed at the time the MIR in question was microfilmed for retention in April of 1982. (Paper No. 9, Attachment *76 D, ¶ 4). Any MIR photographs no longer exist and cannot be produced.
Although the Navy, by its counsel, attempts to characterize the December 13, 1983 photograph production as the cumulative result which would have occurred through the normal course of events, the denied FOIA requests and appeals for these photographs belie such attempt. By early June, 1983 the plaintiffs had been informed, both in response to their original requests and on appeal, that the photographs which they sought would reveal the deliberative mental processes of the investigators in question, and for that reason such photographs would not be disclosed. By the end of July, the plaintiffs filed suit and the Navy's next action with regard to the requested photographs was taken on August 31, 1983 when a part-time legal advisor with the NSC examined the Vreeland file folder. There are no facts which indicate that such an examination, or, as the court in Steenland wrote, "a second look," would have occurred without the plaintiffs having filed suit. Only after the file was examined did the production of the photographs eventually occur in December of 1983. In short, this court concludes that the plaintiffs' institution of this suit caused the Navy to review its position and eventually produce all the photographs requested. The plaintiffs have substantially prevailed and are eligible for attorneys' fees and litigation costs.

B. Entitlement

The decision to award fees and costs to an eligible party under § 552(a)(4)(E) rests in the sound discretion of the district court. Church of Scientology, 653 F.2d at 590. After examining the legislative history of this section of the FOIA and its purposes, the courts have enumerated the factors to be examined to determine whether an eligible plaintiff is entitled to an award of fees and costs as follows: (1) whether the Government had a colorable basis in law for the withholding; (2) the benefit to the public; (3) whether the complainant was indigent or a nonprofit interest group; and (4) the commercial interest of the plaintiff.[2]Nationwide Building Maintenance, Inc. v. Sampson, 559 F.2d 704 (D.C.Cir.1977), cited with approval in, Nix v. United States, 572 F.2d 998, 1007 (4th Cir.1978).
The FOIA mandates that the Government make its records available to the public upon request. Federal Trade Commission v. Grolier Inc., 462 U.S. 19, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983). Section 552(b)(5) exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Federal Open Market Committee v. Merrill, 443 U.S. 340, 352, 99 S.Ct. 2800, 2808, 61 L.Ed.2d 587 (1979).
One class of agency memoranda exempted by Exemption 5 is agency reports and working papers subject to the privilege for predecisional deliberations. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). Playboy Enterprises, Inc. v. Department of Justice, 677 F.2d 931, 935 (D.C.Cir.1982). Non-disclosure of these memoranda is permitted to avoid the premature disclosure of agency decisions and to encourage the free exchange of ideas within the agency by avoiding the chilling effect of premature criticism. Mead Data Central Inc. v. United States Dep't of Air Force, 566 F.2d 242, 257 (D.C.Cir.1977). The deliberative process privilege encompassed by exemption 5 is intended to safeguard the quality of decision making by facilitating frank discussions through the assurance of confidentiality. Sears, 421 U.S. at 150-53, 95 *77 S.Ct. at 1516-18; Russell v. Department of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir.1982); Murphy v. Tennessee Valley Authority, 571 F.Supp. 502, 504 (D.D.C. 1983).
This exemption, however, is to be narrowly construed. EPA v. Mink, 410 U.S. 73, 87, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973). Any factual materials must be disclosed even though such materials may comprise only part of an otherwise privileged document, Mink, 410 U.S. at 87-88, 93 S.Ct. at 836; Ethyl Corp. v. EPA, 478 F.2d 47, 49-51 (4th Cir.1973); Wellford v. Hardin, 330 F.Supp. 915, 917 (D.Md.1971); Greene v. Thalhimer's Dep't Store, 93 F.R.D. 657 (E.D.Va.1982). However, if the manner of selecting or presenting purely factual material would so expose the deliberative process within an agency, or if the facts are "inextricably intertwined" with the policy making process, then the facts are exempted as well by section 552(b)(5). Mead Data, 566 F.2d at 256-57 (and cases cited therein). See also Paisley v. C.I.A. 712 F.2d 686, 699 (D.C.Cir.1983); Skelton v. United States Postal Service, 678 F.2d 35 (5th Cir.1982); Montrose Chemical Corp. v. Train, 491 F.2d 63 (D.C.Cir.1974). But this exception to disclosure is not to be read so broadly so as to undermine the basic rule. Paisley, 712 F.2d at 699.
In this case, although the photographs have been produced and their production is, therefore, moot, the court must still examine the propriety of their having been initially withheld in its examination of the question of the award of fees and costs. The Navy contends that the release of the photographs reveals the deliberative process of the investigators and, therefore, they were properly withheld under Exemption 5. Because Commander Vreeland selected several photographs, from the large number taken, for attachment to the Vreeland report, disclosure of the attached photographs would permit indirect inquiry into his mental processes. Similarly, although the photographs attached to the MIR were admittedly factual, they too were entitled to protection as part of the deliberative process, according to the Navy. Furthermore, the Navy contends that predecisional agency deliberations were exposed by the release.
The photographs attached to the investigative reports compiled by Navy investigators are factual in nature. They are not so intertwined with the deliberative portions of these reports that they could not have been segregated and produced. The only question is whether there is a colorable argument that the photographs reveal the deliberations of the Navy investigators and, therefore, the photographs were withheld in good faith by the Navy when it received the FOIA request from the plaintiffs. This court concludes that they were not.
Assuming that the withheld photographs fall within the selection or presentation portion of the exception to the factual disclosure requirement,[3] the Navy has not demonstrated that a good faith assertion of that exception was made. To the contrary, the record reveals that only after this suit was filed by the plaintiffs did someone in the Navy's employ open the Vreeland file folder and examine the report and then discover that the photographs were not attached to the report. (Paper No. 9, Attachment F, ¶ 14). The failure to review the photographs in the Vreeland file or discuss their use with Commander Vreeland when the plaintiffs' requests or appeals were received was reasonable, the Navy asserts, because it was NSC's procedure to store in such files only those items included in the memorandum and, therefore, the Navy could and did properly assume that any items in the folder shared the same privileged status accorded the memorandum. Id. ¶ 10.
*78 The Navy's argument asks too much. In essence, the Navy is claiming that whenever photographs are attached to a report by an investigator they cannot be revealed because they would expose the deliberative processes of the investigator. Such a sweeping argument is rejected. Such a policy would swallow the requirement that factual matter be disclosed when requested by FOIA plaintiffs and would result in a huge mass of factual material being forever screened from public view. Vaughn v. Rosen, 523 F.2d 1136, 1145-46 (D.C.1975); ITT World Communications, 699 F.2d at 1239. It is not enough that the document containing the photographs is deliberative. Such an argument has been distinctly rejected when the factual matter is in some form other than a photograph and there is no reason to accept such a sweeping exception when the factual matter is embodied in a photograph. Moreover, while this court does not state that the inclusion of photographs contained in a deliberative report can never reveal the deliberative mental processes of the investigators, it does not accept a policy which withholds such photographs without a determination that their disclosure would in fact disclose an investigator's deliberations. Anyone making a report may attach photographs to it to better illustrate a review of the subject matter, but the photographs do not become a part of the deliberative process merely because some photographs were selected and others were not. If this were so, every photograph attached to a report, even if only to illustrate the type of plane involved in the accident or the terrain in which it had crashed and having nothing to do with the investigator's deliberations, would be protected. Cf. Playboy Enterprises, Inc., 677 F.2d at 935 (same argument rejected when C.I.A. argued that facts in report were selected by investigator).
The dangers of the Navy's policy are illustrated by the present case. The Navy's policy permitted those responding to the plaintiffs' requests to assume that the photographs were attached to the investigative memoranda and to assume that they were deliberative when, after suit was filed and a closer look was taken, it was discovered that the photographs were not attached to the memoranda and that Commander Vreeland had only used some of the photographs to refresh his memory. (Paper No. 9, Attachment F, ¶ 16). In short, this court rejects the Navy's assertion made in response to FOIA requests that the photographs were withheld because they were attached to exempt memoranda and therefore were encompassed by the same exemption. See Kreindler v. Department of the Navy, 372 F.Supp. 333, 335 (S.D.N.Y.1974) (roll of film with investigative report ordered disclosed without discussion). The Navy did not have a colorable basis for asserting, nor is it clear that it determined whether it had a colorable basis for asserting, that these particular photographs attached to the requested reports would reveal the deliberative processes of the investigators.[4]
Citing Kissinger v. Reporters Committee for Freedom of the Press, 445 U.S. 136, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980), the Navy also contends that it was not required to produce to the plaintiffs the AFIP photographs generated by another agency. To the extent that the photographs, produced by the Navy on December 13, 1983, included AFIP photographs not in Commander Vreeland's file and therefore not in the possession of the Navy when the FOIA requests were made by the plaintiffs, the Navy's contention is irrelevant to the issue in the present case. Litigation was commenced by the plaintiffs to force disclosure of photographs in the possession of the Navy, not the AFIP, and the *79 fact that the Navy produced photographs it obtained from the AFIP to the plaintiffs has no bearing on whether fees and costs should be awarded as to the production of the photographs in issue in this case.
As the categories of the photographs disclosed in December, 1983 reveal, 23 of the AFIP photographs were contained in Commander Vreeland's investigative file. As cases discussing the Kissinger case reveal, an agency is required to produce those documents originating in another agency over which it has possession or control.[5]Wolfe v. Department of Health & Human Services, 711 F.2d 1077, 1079-82 (D.C.Cir.1983); McGehee v. CIA, 697 F.2d 1095, 1110 (D.C.Cir.), modified on other grounds, 711 F.2d 1076 (D.C.Cir. 1983). The use of the AFIP photographs by Commander Vreeland and their inclusion in the Vreeland file indicates that the Navy did have possession and control over the photographs. More important, however, is the fact that the Navy withheld all the photographs in the Vreeland file because of their use by the Navy investigator. The Navy neither asked the AFIP whether the photographs were to be withheld or told the plaintiffs that the photographs were those of another agency. In fact, the Navy only discovered that the photographs were AFIP photographs after this suit was filed and a closer look was taken. (Paper No. 9, Attachment F ¶ 14). An agency cannot be permitted to withhold documents or photographs as its own and then avoid an award of costs, because, after litigation is commenced and the agency closely examines the documents or photographs, it discovers that the documents belong to another agency. A determination of whose documents are withheld should be made long before suit is filed in federal court. In sum, this court concludes that the Navy did not have a colorable basis in law for the withholding of the photographs sought by the plaintiffs in this FOIA suit.
The final three factors to be considered in determining whether the plaintiffs are entitled to an award of fees and costs are closely related. They reflect various aspects of the inquiry of who most benefitted from the inquiry, the plaintiff or the public. Steenland, 555 F.Supp. at 910. The general benefit attendant to public disclosure under the FOIA is too broad a criterion to justify an award for such a standard would require fees to be awarded in every case. Id. Here, however, the resulting benefit is more narrowly drawn. Although the suit does aid the plaintiffs in pursuing their litigation against McDonnell Douglas Corporation, this suit also examined the Navy's policy of withholding photographs attached to investigative reports. The determination by this court that the Navy, as a matter of policy, withholds too much benefits not only those plaintiffs involved in this case but those involved in future FOIA requests who hopefully will obtain photographs which are not deliberative in nature, but which are attached to investigative reports, without resorting to filing suit in federal court and before those photographs are destroyed by the Navy.
One certainly cannot characterize plaintiffs' interest in this case as predominately a commercial one foreclosing an award of fees and costs. See Cazalas v. United States Dept. of Justice, 709 F.2d 1051, 1054 (5th Cir.1983). While the plaintiffs may use the information they obtain in their civil suit against the plane's manufacturer, such information may not only serve to aid them individually but could ultimately provide the public with safer aircraft.
After examining all of the factors of importance in determining whether an award should be made under § 522(a)(4)(E), the court concludes that the plaintiffs are eligible for and entitled to an award of reasonable attorneys' fees and costs incurred in pursuing this litigation.
*80 Accordingly, it is this 14th day of June, 1984, by the United States District Court for the District of Maryland, ORDERED:
1. That the Motion for Summary Judgment filed by the plaintiffs be, and the same is hereby, GRANTED in part and DENIED in part as moot.
2. That the Cross motion for Summary Judgment filed by the defendant be, and the same is hereby, DENIED.
3. That the plaintiffs' counsel submit itemized affidavits detailing the amount of time spent on this case, the manner in which that time was spent, whose time was so spent, and as to each attorney whose time was spent his or her experience and the rate at which he or she billed at the time the particular services were provided. These affidavits are to be submitted on or before July 6, 1984.
4. That the Clerk mail a copy of this Memorandum and Order to counsel for all parties.
NOTES
[1] The photographs previously produced were those in categories 1 and 3, identified by the Navy as the photographs taken by NARF and the NAS Patuxent River, MD photos.

Although the Navy asserts that it is under no duty to produce photographs which have previously been produced, the plaintiffs do not contend otherwise. The plaintiffs sought only the production of those photographs they had not been supplied previously, particularly those depicting the left wing assemblies and subassemblies. The government was not required to duplicate its earlier production of photographs. Nor does the production of these previously produced photographs demonstrate that the plaintiffs have not substantially prevailed as the focus of this suit and the FOIA request was for those photographs which the Navy was admittedly withholding. The production of photographs not in issue does not dilute the plaintiffs' success nor demonstrate the Navy's good faith as to the photographs in question.
[2] Although the Second Circuit in Vermont Low Income, 546 F.2d at 513, identified two additional factors to be considered: (1) whether the prosecution of the plaintiff's action could reasonably been regarded as necessary; and (2) whether the plaintiff's suit had a substantial causative effect on the delivery of the information, these factors were addressed in determining whether the plaintiffs were eligible for an award of fees and costs and will not be reiterated here.
[3] More recent cases examining this exception to the factual disclosure requirement appear to limit its application to staff summaries of record evidence in adjudicatory and rule making proceedings. ITT World Communications, Inc. v. FCC, 699 F.2d 1219, 1239 (D.C.Cir.1983); Paisley, 712 F.2d at 699.
[4] The affidavit of G.T. Eccles, Head of Records & Data Processing Dept. of the NSC, reveals that the Vreeland file was examined before August of 1983 (Paper No. 9, Attachment F, ¶ 13) at which time the Navy should have known that the photographs were not attached and that that basis for withholding the photographs did not exist. If then the photographs were withheld as revealing, by their selection, the deliberative processes of Commander Vreeland, it appears that that information was not confirmed with the investigator, Commander Vreeland, until suit was filed and not when the FOIA requests were denied.
[5] The language used in Kissinger is "possession or control," but more recent cases have examined both concepts before reaching the conclusion that production was required. More importantly, however, the D.C. Circuit has also held that an agency cannot simply refuse to act because the documents originated elsewhere. McGehee, 697 F.2d at 1110.